**KEENE CORPORATION, Plaintiff,**

**v.**

**John D. WEBER et al., Deféndants.**

**No. 74 Civ. 1961 (MP).**

United States District Court,
S. D. New York.

May 12, 1975.

Anderson Russell Kill & Olick, New York City, for plaintiff; by Lawrence Kill, New York City.

Zelnick & Bressler, New York City, for defendants; by Allan Zelnick, New York City.

## OPINION

POLLACK, District Judge.

This Court initially heard argument on the defendant Dill's Rule 12(b)(2) motion to dismiss for lack of jurisdiction over the person on August 30, 1974. De-

cision on the motion was held in abeyance at that time because of the sharp semantic dispute as to the facts on which jurisdiction was purportedly based, as well as an underlying concern that the nationwide service of process provisions in the Securities Act and the Exchange Act [1] were being unjustifiably invoked to summon an Ohio attorney before this Court. In order to provide the plaintiff Keene Corporation with a full opportunity to establish an evidentiary basis to sustain personal jurisdiction as to Dill, Keene was permitted to depose Dill on the limited questions of his participation and financial interest in the transactions alleged in the complaint. *See* Leasco Data Processing Equipment Corp. v. Maxwell, 468 F.2d 1326, 1343–44 (2d Cir. 1972).

Dill submitted to oral examination before trial on December 20, 1974,[2] and additional argument on the pending motion was heard on April 25, 1975. The Court finds upon the record now before it that plaintiff has not sufficiently sustained its jurisdictional allegations as to defendant Dill, and the latter's Rule 12(b)(2) motion to dismiss is now granted. It now appears that Keene's invocation of nationwide service of process was based upon gossamer and contrived allegations of "participation" by Dill. This case is indicative of an unfortunate tendency, which has become all too prevalent, to proceed on speculative assumptions in the absence of a sound factual foundation, against professional men as aiders and abettors, for the supposed *in terrorem* effect thereof due to the potentially coercive impact of such a suit on their professional status and reputation.

Keene sues Freedom Ring and Weber and Dill, the sole shareholders of Freedom Ring, for damages and equitable relief, alleging misrepresentations made in connection with the merger of Freedom Ring into Keene and the exchange of Keene stock for Freedom Ring stock allegedly in violation of the Securities Act, the Exchange Act, and New York statutory and common law.[3]

Following the termination of his employment with the leading manufacturer of turntable bearings, Weber started Freedom Ring in Ohio in 1972 in order to continue in the field on his own. Weber received 900 shares of common stock [stated value $1] and became president, while Dill, his attorney, received at Weber's suggestion the remaining 100 shares in lieu of compensation for services rendered in incorporation and became secretary. Freedom Ring conducted no business through January 1, 1973, except to enter into a lease of business premises.

Since Keene's Kaydon Division had apparently unsuccessfully competed with Weber's prior employer, Weber thought that Keene might be a source of financing for Freedom Ring. Discussions in New York at Weber's initiative in early 1973 led to the negotiation and signature of a memorandum of understanding on April 16, 1973. Additional discussions took place in New York over the next 10 days. On April 27, 1973, Weber presented a proposal to the Keene Directors for the operation of Freedom Ring as a division of Keene, and the Directors authorized Keene's President, Bailey, to proceed with completion of the plan. Keene alleges that at this meeting Weber knowingly made misrepresentations concerning *inter alia* the plan of operation and the anticipated cash requirements.

On May 3, 1973, a letter agreement was signed providing for the employment of Weber and the acquisition of Freedom Ring by Keene if Weber were to obtain orders for Freedom Ring with a potential value of $1.5 million. This

---

1. 15 U.S.C. § 77v(a) ; 15 U.S.C. § 78aa.

2. The deposition and the affidavits submitted on the motion are made a part of this opinion and determination.

3. Keene also asserts common law breach of employment contract claims against Weber, but these claims do not involve Dill.

agreement was approved by Keene's Board on May 15, 1973. Keene contends that at a May 22, 1973 meeting in Ohio, Weber in Dill's presence knowingly misrepresented to Bailey that the requisite orders for the acquisition had been obtained and that on the basis of that misrepresentation the merger was approved by the Board on May 29, 1973 at a meeting in New York attended by Weber. Pursuant to the terms of the merger agreement, the stockholders of Freedom Ring, Weber and Dill, received $125,000 in Keene stock plus conditional rights to additional Keene stock in exchange for their Freedom Ring stock.

■ It is undisputed that Dill never physically entered New York or had any conversations in New York or corresponded with anyone associated with Keene in connection with any of the negotiations between Keene and Weber. Moreover, both Dill and Weber vigorously contend, and this Court concludes from the evidentiary record, that Dill acted throughout the discussions between Keene and Weber entirely in a professional advisory capacity as Weber's attorney, rather than as a principal. Throughout the period involved, Dill was only marginally related to Weber's activities, if at all, and was interested only tangentially. Indeed, both Weber and Dill point out that Dill was only vaguely aware of Weber's discussions with Keene up to the point that the memorandum of understanding was reached. Dill's advice to Weber, rendered essentially after the fact, was that "If you can trust them, it looks like a good deal for you." [Dill Deposition, December 20, 1974 at 55]. Even beyond that point, Dill was consulted by Weber only on a limited basis in connection with the transactions at issue. There is thus no evidentiary justification for a conclusion that Dill was even generally aware of any overall improper conduct or that he played any role therein. Mere silence of Dill, absent a duty on his part to speak to Keene, is not a manipulative or deceptive device or contrivance. Securities Exchange Act, section 10, 15 U.S.C. § 78j.

■ A lawyer acting professionally, solely in an advisory capacity, as in this case, is not a "participant" in the transaction. *Compare* S. E. C. v. National Student Marketing Corporation, 360 F.Supp. 284, 291–93 (D.D.C.1973). This is clearly not a case involving, for example, a misleading opinion letter authored by an attorney in connection with registration and a public offering where the public trust would be jeopardized. *Compare* S. E. C. v. Spectrum, Ltd., 489 F.2d 535 (2d Cir. 1973); S. E. C. v. National Student Marketing Corp., 360 F. Supp. 284 (D.D.C.1973).

Since Dill never physically entered New York in connection with these transactions, argument on the motion has largely focused on whether Dill's relationship with Weber and Freedom Ring was such that Dill could nonetheless be subjected to *in personam* jurisdiction in New York on the basis of Weber's essentially undisputed acts in New York.[4]

■■ While the mere *presence* of one alleged conspirator does not confer personal jurisdiction over another alleged conspirator, Leasco Data Processing Equipment Corp. v. Maxwell, 468 F.2d 1326, 1343 (2d Cir. 1972), venue and jurisdiction over the person of all the knowing participants in an alleged fraudulent scheme are proper under the federal securities laws as long as one of the participants commits an act in furtherance of the scheme in the forum district. *See, e. g.,* Wyndham Associates v. Bintliff, 398 F.2d 614, 620 (2d Cir.), cert. denied 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968); Zorn v. Anderson, 263 F.Supp. 745, 748 (S.D. N.Y.1966). A finding of knowing participation in the scheme may be based upon evidence that another defendant acted within the forum as the absent

---

4. Weber and Freedom Ring withdrew their motions to dismiss for lack of personal jurisdiction following the August 30, 1974 hearing on all the motions.

defendant's representative or agent or consulted him or that the absent defendant committed an act without the jurisdiction intended to have an effect within the jurisdiction in furtherance of the scheme. *See* Leasco Data Processing Equipment Corporation v. Maxwell, [1973-74] CCH Fed.Sec.L.Rep. ¶ 94,358 (S.D.N.Y. Jan. 9, 1974).

■ Keene contends that jurisdiction over Dill is now supported following the deposition on the basis of the following allegations of knowing participation: (1) Dill was a co-shareholder and co-officer of Freedom Ring and was knowledgeable as to Weber's efforts to obtain financing for Freedom Ring, (2) Dill had telephone conversations with Weber on unidentified subjects while Weber was in New York negotiating the basic acquisition agreement, (3) Dill actively participated in two meetings in Ohio with Keene officers, the second meeting having been held to persuade Keene that the requisite orders had been obtained, (4) Dill readily accepted the exchange of Freedom Ring stock for his Keene stock pursuant to the merger notwithstanding the defendants' contention that the merger was merely a facade to provide Weber with a more attractive employment package through a tax free exchange of stock, and (5) Dill advised Weber to disobey instructions pertaining to his employment given to him by his superiors at Keene. At oral argument, Keene indicated that it primarily relies on the second and third contentions.

The Keene Board had approved the agreement in suit on May 15, 1973. Thereafter, on May 18th a "meeting" at the Cleveland Airport took place between Dill and Weber and McCarthy, a Keene officer and director. Keene's unverified version of the meeting itself indicates that nothing was negotiated at that time. Dill states that he simply told McCarthy that he thought that the agreement was a fair one. [Dill Affidavit, June 27, 1974, ¶ 11; Deposition, at 90–91].

■ On May 22, 1973 Weber met Bailey in Cleveland. Dill was present, but took no active part in the business discussion between Weber and Bailey concerning the orders in question. [Dill Deposition, December 20, 1974, at 82–83; Weber Affidavit, April 22, 1975, ¶s 5, 6]. Dill's knowledge of the orders prior to the meeting was limited to a message left with his secretary by Weber several days previously that Weber had obtained orders. Dill had not seen the orders, had no function in respect thereto, nor had he participated in Weber's efforts to obtain them. [Deposition at 82–83; Weber Affidavit, April 22, 1975, ¶ 6]. Knowing participation in the alleged scheme is not established simply by association or silence or mere awareness.

Bailey has submitted an affidavit which attempts to inculpate Dill in respect to the orders by stating the following:

> On May 22, 1973, I met with Mr. Reese Dill and Mr. John Weber at the Hermit Club in Cleveland. At the May 22 meeting Mr. Dill directly pressured me to authorize the issuance of Keene stock in exchange for Freedom Ring stock in accordance with the Acquisition Agreement. Mr. Dill stated that Weber has now got the requisite orders from both Grove and Caterpillar and specifically asked why Keene was delaying in issuing its stock. I remember being concerned and upset over Mr. Dill's role in pressuring me and Keene in this regard. [Bailey Affidavit, April 29, 1975, ¶ 2].

This is hardly sufficient to connect Dill as a purposeful, knowing participant in Weber's business dealings and alleged scheme, in the light of the paucity of Dill's knowledge as indicated above.

The plaintiff has referred to long distance phone talks between Dill in Ohio and Weber in New York. Not a scintilla of evidence relates these talks to a culpable connection of Dill with the subject matter of this suit and nothing whatever indicates that Weber was acting as Dill's agent in his New York dealings.

Telephone communication between the absent defendant and the defendants

acting in the forum could be probative of the absent defendant's participation in the scheme, if there were any indication of his direction of the acts within the forum. *See* Leasco Data Processing Equipment Corp. v. Maxwell, [1973–74] CCH Fed.Sec.L.Rep. ¶ 94,358 (S.D.N.Y. Jan. 9, 1974). The mere fact that undefined telephone calls were made, however, assumes significance only if the communication involved was intended to or did have an effect on the negotiations.

■ There is no evidence that the two telephone calls made by Weber from New York to Dill in Ohio had connection with or any impact on the negotiations. The first call was made on April 16th, after the memorandum of understanding had been reached, and both Dill and Weber state that the terms of that memorandum were not discussed in that talk or until Weber returned to Ohio. [Deposition, 52–53, 68–69; Weber Affidavit, April 22, 1975, ¶s 2–4]. Weber apparently again called Dill on April 23rd, but Weber states that this only involved legal technicalities and Dill does not think that Weber mentioned the then upcoming Board meeting on April 27th. Dill denies having any knowledge of the representations made by Weber at that meeting, and Weber also states that he did not discuss them with Dill.[5]

Dill also does not dispute that as a 10% shareholder of Freedom Ring he stood to gain substantially if the merger of Freedom Ring into Keene were accomplished. At the deposition, counsel for Keene repeatedly questioned Dill concerning Keene's assertion that since Weber was already a Keene employee as of May 1st, only Dill would benefit by the merger. At the outset, this argument overlooks the fact that as a 90% shareholder Weber stood to gain sub-

stantially more than Dill did by the merger. In any event, in the present context, an assertion merely that Dill "retained" the benefits of the merger is an insufficient basis for personal jurisdiction.

On the basis of Dill's deposition, the accuracy of Keene's assertion that Dill was knowledgeable as to Weber's efforts to obtain financing is questionable at best. Moreover, as indicated previously, mere knowledge or awareness is not participation. While it is true that Dill was secretary of Freedom Ring, that position was purely a formality without any meaningful involvement in Freedom Ring's business by Dill that could serve as a basis for personal jurisdiction.

Finally, the allegation that Dill advised Weber to disobey the employment directions of his superiors at Keene in violation of the employment contract simply is not relevant to the contention that Dill knowingly participated with Weber in a scheme to effect a merger by which they would receive Keene stock.

This Court accordingly concludes that the plaintiff has not established Dill's knowledge of the alleged violation by Weber or any cognizable or direct degree of participation or acquiescence in furtherance of the violation which invokes aider or abettor liability under the Securities laws. There has been no evidentiary showing of a sufficient involvement by Dill, regardless of how that involvement is characterized, to warrant the jurisdictional reach over his person by this Court. Self-evidently, this disposition is not a determination on the merits of any claims Keene may have or assert in a proper forum.

Motion of defendant Dill to dismiss as to him is granted.

So ordered.

5. Dill did communicate by phone with Keene's attorneys on several occasions during May with respect to various minor aspects of the agreement, including drafting the transfer of Freedom Ring's lease of business premises. Keene apparently no longer asserts these calls as a basis for jurisdiction, and an attor-

ney's acts outside the jurisdiction in effectuating a previously reached agreement do not subject him to jurisdiction under the co-conspirator theory. *See* Leasco Data Processing Equipment Corp. v. Maxwell, [1973–74] CCH Fed.Sec.L.Rep. ¶ 94,358 (S.D.N.Y. Jan. 9, 1974).