John H. NOONAN, et al., Plaintiffs,

v.

Edward GRANVILLE–SMITH, Jr., et al., Defendants.

No. 81 Civ. 1341 (WK).

United States District Court, S. D. New York.

July 7, 1981.

24

Cadwalader, Wickersham & Taft by Earl H. Nemser, New York City, Cohen & Annand, P. C., Alexandria, Va. (Bernard S. Cohen, Alexandria, Va., of counsel), for plaintiffs.

Cole & Deitz by Robert Kushner, New York City (Van Ness, Feldman & Sutcliffe, Washington, D. C., of counsel), for Trubin, Sillcocks defendants.

Feigen, Drucker, Loecher & Licht by Robert S. Feigen, New York City (Tolbert, Smith, FitzGerald & Ramsey, Arlington, Va., of counsel), for Granville-Smith defendants.

Sharfman, Shanman, Poret & Siviglia, P. C., by Richard M. Sharfman, New York City, for Laurita defendants.

Jacob, Medinger & Finnegan, New York City, Rose, Schmidt, Dixon, Hasley, Whyte & Hardesty, Pittsburgh, Pa. (Roger Curran, Pittsburgh, Pa., of counsel), for Boyd defendants.

Weil, Gotshal & Manges, New York City, Miles & Stockbridge, Baltimore, Md. (Michael D. Colglazier, Baltimore, Md., of counsel), for defendant Equitable Trust Co.

Casey, Lane & Mittendorf by Alan R. Wentzel, New York City, Venable, Baetjer & Howard, Baltimore, Md. (Nell B. Strachan, Baltimore, Md., of counsel), for defendant Mercantile Safe Deposit & Trust.

Anderson, Russell, Kill & Olick, P. C., by James P. Heffernan, New York City, Frank, Bernstein, Conaway & Goldman, Baltimore, Md. (Jay I. Morstein, Baltimore, Md., of counsel), for defendant Peter Wilkes.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City (Smith, Somerville & Case, Baltimore, Md., of counsel), for defendant Steven Meszaros.

Hart & Hume, New York City (Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, Md., of counsel), for defendant Steven L. Wilson.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Plaintiffs in this securities fraud action are purchasers of limited partnership interests in the now insolvent Maidsville Coal Mining Partnership ("Maidsville" or "the Partnership"). The thirty-three corporate and individual defendants are categorized in the Amended Complaint as: Granville-Smith defendants; Laurita defendants; Trubin Sillcocks defendants; Bank defendants; and Boyd defendants.[1] Originally brought in the United States District Court for the District of Columbia, the action was transferred to this district by order dated February 26, 1981. The Bank, Boyd, Laurita and Granville-Smith defendants now move to dismiss for improper venue/lack of

personal jurisdiction, failure to state a claim on which relief may be granted, and failure to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. The Laurita defendants alone move to dismiss for insufficiency of process as to the Children's Trust, and to strike certain portions of the Amended Complaint as redundant and scandalous.

### Background

Maidsville, a West Virginia limited partnership, was organized by the Granville-Smith defendants in October 1977 for the purpose of leasing or sub-leasing coal rights to various West Virginia and Pennsylvania properties that were to be acquired from the Laurita defendants. The Granville-Smith defendants, in conjunction with the Trubin Sillcocks defendants (Granville-Smith's counsel for this purpose) offered limited partnerships in Maidsville as an investment opportunity. In addition to individually soliciting potential purchasers, the Granville-Smith and Trubin Sillcocks defendants provided such potential investors with a Private Placement Memorandum containing information allegedly supplied by the Laurita and Boyd defendants. They also invited prospective purchasers to attend a November 1, 1977 meeting where such prospective purchasers were permitted to question a Granville-Smith defendant about the offering. The closing of the partnership offering was held on December 28, 1977, at which time each of the plaintiffs purchased a limited partnership unit.

### Jurisdictional Allegations

Jurisdiction is predicated primarily on Section 27 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78aa, and on 28 U.S.C. § 1331. With respect to venue, plaintiffs rely on the so-called co-conspirator theory, which provides that under Section 27, venue is proper as to all conspirators if a single conspirator is shown to have committed an act in the forum in furtherance of the alleged fraudulent scheme. *Wyndham Associates v. Bintliff* (2d Cir.

---

1. Because Maidsville is currently a debtor in possession under Chapter XI of the Bankruptcy

Act, commencement of any action against it is stayed and it is not a party hereto.

1968) 398 F.2d 614, 620, *cert. denied,* 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438; *Keene Corp. v. Weber* (S.D.N.Y.1975) 394 F.Supp. 787, 790–91. Plaintiffs point, in this connection, to two acts allegedly committed in New York by the Trubin Sillcocks defendants: the preparation of the Private Placement Memorandum; and the mailing to purchasers—after the closing took place—of a letter stating that the closing had gone as planned. Plaintiffs also claim that this court has subject matter jurisdiction pursuant to 18 U.S.C. § 1964 (the so-called RICO Act). Diversity among the parties not being complete, plaintiffs rely on the doctrine of pendent jurisdiction with respect to the various state law claims.

*Factual Allegations*

A wide variety of representations were made to prospective purchasers of limited partnership units at the November 1, 1977 meeting, in the Private Placement Memorandum, and at various other times and places.

Insofar as here relevant, they were told: that the ·Laurita defendants would convey their properties to the Partnership in return for an irrevocable letter of credit to be furnished by the Granville-Smith defendants, thus giving the Partnership clear and unencumbered title to the properties; that the Partnership would acquire from the Lauritas a viable contract to sell Maidsville coal to the Monongahela Power Company; that although it was contemplated that the Lauritas, who had profitably operated the properties in the past, would continue to operate them for the Partnership, the Partnership would in no sense be dependent on the Lauritas but could operate the properties on its own if it chose to do so; that the properties had been subjected to a geological survey (by the Boyd defendants) with highly optimistic results; and that the Bank defendants would provide financing for any prospective investor who required it.

It is claimed that all of the foregoing representations were false when made—or thereafter became so—with the exception of the last which, for reasons discussed below, is claimed to have been misleading.

The Granville-Smiths never provided the promised irrevocable letter of credit. Instead, at the December 28 closing, the Granville-Smith, Laurita, and Trubin Sillcocks defendants arranged for the deeds and leases to the Maidsville properties, as well as plaintiffs' promissory notes, to be placed in an escrow account which was later transferred to the Lauritas as security for the price of the properties. Thus the Partnership's title to such properties was anything but clear and unencumbered. The Lauritas had no right to assign to the Partnership their contract with Monongahela Power without the latter's consent, which was not forthcoming; moreover, the properties were incapable of producing coal of a grade and quality acceptable to Monongaleha. Because of bitter disagreements between the Granville-Smiths and the Lauritas, it became impossible for the latter to operate the properties for the Partnership; and because of practical difficulties in obtaining the necessary permits from the states of Pennsylvania and West Virginia, there was no possibility that the Partnership could operate them alone. The Boyd defendants' geological survey contained reckless exaggerations and misstatements.

The representations that the Bank defendants would furnish financing to any investor requiring it was, it seems, wholly accurate. Indeed, the Bank defendants apparently went so far as to finance some investors of rather shaky credit. Such representation is nevertheless claimed to have been misleading in that it suggested that the Banks had thoroughly examined the Maidsville enterprise and were prepared to underwrite it. In this connection, it is alleged that the Granville-Smith defendants made available to certain Bank officers an automobile and other economic benefits with the purpose of inducing such officers to extend loans to investors in the Maidsville Partnership.

With respect to the Bank defendants, it is also alleged that they disbursed (or authorized Granville-Smith to disburse) plaintiffs' funds to the Partnership at the December 28 closing, despite their actual or construc-

tive knowledge that the Granville-Smith defendants had failed to provide the promised letter of credit and had mortgaged the investors' capital.

Plaintiffs claim that despite vigorous efforts on their part to learn the truth, they were not apprised of any of these matters until well after the closing took place; and, indeed, that the Trubin Sillcocks defendants—in the letter mailed from New York—had specifically misled them about the closing.

*Substantive Counts Alleged*

In Count I of the Amended Complaint plaintiffs charge each defendant with participating in a common scheme to defraud plaintiffs in connection with the sale of Maidsville partnership shares, thereby violating Sections 10(b) and 20 of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5.

In Counts II and VI plaintiffs allege aider and abettor liability as to the Bank and Boyd defendants, under Section 10(b) and Rule 10b–5 of the 1934 Act.

In Counts III, IV, V, VII, VIII and IX plaintiffs allege various state law claims not here relevant.

Finally, in Counts X and XI plaintiffs allege causes of action against the Granville-Smith, Laurita, and Trubin Sillcocks defendants for engaging in a pattern of racketeering activity in violation of 18 U.S.C. § 1961, et *seq.*, commonly known as the RICO Act.

### The Motions to Dismiss
#### The Bank Defendants

As we have seen, plaintiffs proceed on two theories as to the Bank defendants: first, it is alleged that they knowingly permitted the Granville-Smith defendants to represent that the Banks had thoroughly investigated the Maidsville deal and were recommending it; and second, it is alleged

that the Banks participated (or authorized Granville-Smith to act for them) in the December 28 closing, well knowing that a fraud had been or would there be committed against plaintiffs. For purposes of convenience, we hereafter refer to the first of these theories as the "inducement claim" and to the second as the "closing claim."

With respect to the inducement claim, we find that no fact alleged in the Amended Complaint would support it. Moreover, based on everything contained in the various affidavits submitted by plaintiffs, and upon everything said at oral argument, we find that there is no reasonable possibility that discovery would uncover such facts.

The problem with this claim lies with the element of reliance. Plaintiffs assert that it was *reasonable* for them to assume that the Banks had made a thorough investigation of the investment, and that the fact that the Banks agreed to loan money to them accordingly created an impression of financial soundness in the investment which would not otherwise have existed. We disagree, and see no basis for any such assumption on plaintiffs' part.

There is no general fiduciary obligation between lender and borrower, *University National Bank v. Wolfe* (1977) 279 Md. 512, 369 A.2d 570, *Taylor v. Equitable Trust Co.* (1973) 269 Md. 149, 304 A.2d 838, *Suburban Trust Co. v. Waller* (Ct.Spec.App. 1979) 44 Md.App. 335, 408 A.2d 758, Annot., 70 A.L.R.3d 1344 (1976), and at oral argument counsel for plaintiffs conceded that none of plaintiffs had any prior relationship with the Bank defendants, let alone a relationship of the sort which might, at common law, have given rise to such a fiduciary obligation. Although plaintiffs have submitted several affidavits intended to demonstrate that, on inquiry, the Banks recommended the investment, these affidavits do not in fact support such a conclusion. Instead, the affidavits reveal that, when asked if Maidsville was a good deal, the Banks replied merely that Granville-Smith was a good man.[2] It is, moreover, relevant,

---

**2.** Plaintiffs have made no showing, and we can draw no inference, that these defendants did   not believe this statement.

although not necessarily decisive, that on accepting their loan each of the plaintiffs signed a document which contained the following paragraph:

"I [the borrower] acknowledge that you [the bank] have in no way made any recommendations, warranties, or representations with respect to the feasibility or wisdom of investing funds in the Partnership nor have you given me any financial or investment counseling with respect thereto."

We conclude that plaintiffs could not, on the facts and circumstances conceded by them, have reasonably construed any action allegedly taken by the Bank defendants as a recommendation of the Maidsville enterprise. We accordingly strike from the Amended Complaint all allegations bearing on the inducement claim. Cf. *Goldman v. The Singer Co.* (S.D.N.Y.1981) 89 F.R.D. 436, *aff'd mem.* (2d Cir. 1981), 661 F.2d 908.

■ With respect to the closing claim, while the Amended Complaint alleges no fact to support it, plaintiffs made claims during oral argument to the effect that the Banks either participated in the December 28 closing or had become aware of what there transpired before they delivered (or authorized Granville-Smith to deliver) plaintiffs' money to the Partnership. The Bank defendants, on the other hand, stoutly assert that they neither participated in, nor knew anything about what transpired at, the closing. This dispute presents a discrete issue of fact susceptible to ready solution by limited discovery. We therefore refer the matter to Magistrate Gershon with instructions to conduct expedited discovery limited to the following questions: (1) did the Bank defendants, or any of them, participate in the December 28 closing, and if not, (2) were they, or any of them, aware of Granville-Smith's alleged derelictions when plaintiffs' money was delivered to the Partnership? Cf. *Credit &*

*Finance Corp. Ltd. v. Warner & Swasey Co.* (2d Cir. 1981) 638 F.2d 563, 567. Upon conclusion of such discovery, the Magistrate will report to us whether, in her opinion, plaintiffs have adduced sufficient evidence to present an issue of fact with respect to either such question. The Banks may then, if they deem it appropriate, renew their motion to dismiss the Amended Complaint.

## The Boyd Defendants

■ There is no claim that any of the Boyd defendants ever had the slightest connection with the Southern District of New York. They are charged only with having prepared a fraudulent (or recklessly false) geological report. No fact is alleged in the Amended Complaint—or was mentioned in oral argument—which would suggest that any of them suspected that the Granville-Smiths or anyone else would perform an unlawful act with respect to that report or with respect to the offering in which it would be used. There is therefore no basis for charging them with engaging in a conspiracy with anyone, and venue as to them cannot be supported by any acts the Trubin Sillcocks defendants may have performed in this district. The Amended Complaint is accordingly dismissed as to the Boyd defendants for want of jurisdiction and for improper venue.[3]

## The Laurita Defendants

■ Plaintiffs' allegations against the Laurita defendants hardly constitute a model of draftsmanship. However, one simple fact pattern emerges therefrom (as amplified at oral argument): the Lauritas were the owners of mining properties which they were anxious to sell; after extensive fraudulent activity (of which the Lauritas may or may not have been aware and in which they may or may not have participated) the plaintiffs wound up in possession

---

3. We note in passing that plaintiffs are in no way prejudiced by this ruling. Had we found jurisdiction over the Boyds, we would have severed as to them. The simple question in the case against them—which can now be tried in any jurisdiction where they may be found—is: was their geological survey fraudulent or recklessly false? It would be absurd—and highly prejudicial to the Boyds—to encumber that simple question with all the charges and counter charges growing out of the balance of the Amended Complaint.

of those properties—now claimed to be worthless—and the Lauritas wound up with plaintiffs' money. Of course, the parenthetical "may or may not" is the crux of the case against the Lauritas. All we observe at this point is that we cannot preclude the possibility that appropriate discovery might enable plaintiffs to establish: (1) that the Lauritas were guilty of fraud; and (2) that they participated in a conspiracy in the course of which the Trubin Sillcocks defendants committed acts in this district. We therefore deny the Lauritas' motion to dismiss for failure to state a claim on which relief may be granted and for improper venue, without prejudice to its renewal after the completion of appropriate discovery.[4] Cf. *Credit & Finance Corp., supra.*

█ With respect to the Lauritas' various procedural motions, we hold them in abeyance until discovery has been completed. While we agree that these defendants are entitled to more enlightenment as to who is claimed to have done what, we think the plaintiffs should have discovery to assist them in making the necessary specifications. As to the question of proper service on the Children's Trust, the parties can undoubtedly work that out among themselves.

█ The Laurita defendants have also moved to strike the RICO counts as to them. As the Supreme Court has recently observed, the RICO statute was an expression of congressional purpose to deal with organized crime's control over business enterprises of all sorts (whether legitimate or illegitimate). *United States v. Turkette* (1981) 452 U.S. 576, 586, 101 S.Ct. 2524, 2530, 69 L.Ed.2d 246. See also *United States v. Guiliano* (2d Cir. 1981) 644 F.2d 85, 88. Nothing suggested in the Amended Complaint or at oral argument even remotely brings this case within the ambit of that purpose. The motion by the Laurita defendants to dismiss the RICO counts is accordingly granted.

█ Although neither the Trubin Sillcocks nor the Granville-Smith defendants have specifically moved to strike the RICO counts as to them (but as to the Granville-Smiths see *infra*), our reasoning would mandate that such a motion be granted if made. We therefore, on our own motion, dismiss the RICO counts as to all defendants.

### The Granville-Smith Defendants

The Granville-Smith defendants, although making no formal motion, submitted an affidavit whereby they associated themselves with all the motions by the other defendants and asked that we deem them also to have moved to dismiss the complaint. Accepting the proferred affidavit as a motion to dismiss, we find it to be frivolous and deny the motion except insofar as it may be construed to seek dismissal of the RICO counts which, as noted above, we dismiss on our own motion.

### Summary

In summary, we dismiss the Amended Complaint as to the Boyd defendants; strike the RICO counts in their entirety; and strike all allegations in the Amended Complaint that bear on plaintiffs' claim that the Bank defendants induced them to invest in the Partnership. Magistrate Gershon, who retains jurisdiction over discovery, is instructed to expedite discovery and report to us on the question of whether the Bank defendants participated in the December 28 closing, and, if not, whether they were aware of Granville-Smith's derelictions when plaintiffs' money was delivered to the Partnership. With respect to the Laurita defendants, the Magistrate will report to us when general discovery has been completed. The Bank and Laurita defendants may, should they deem it appropriate, renew their motions to dismiss for failure to state a claim and for improper venue after completion of discovery as set forth above.

SO ORDERED.

---

**4.** We ask no report from the Magistrate on this question. We simply request advice as to when she deems discovery thereon to be complete.