Saul **MAURIBER**, Plaintiff,

v.

**SHEARSON/AMERICAN EXPRESS, INC., and Judith LeWinter a/k/a Judith Cohen, Defendants.**

**No. 82 Civ. 1802 (KTD).**

United States District Court,
S. D. New York.

Aug. 27, 1982.

Dan Brecher, New York City, for plaintiff.

Peter T. Kujawski, Harry D. Frisch, Leslie A. Klein, Theodore A. Krebsbach, New York City, for defendant Shearson/American Exp., Inc.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

From January, 1980 to October, 1981, Saul Mauriber placed a substantial portion of his life savings in a discretionary customer account at Shearson/American Express, Inc. ("Shearson"), a New York corporation engaged in the investment brokerage business. Allegedly, Shearson proceeded to lose up to $250,000 of Mauriber's money principally by selling off his portfolio of "blue chip securities" and purchasing "speculative" stock. This lawsuit ensued. It exemplifies a growing number of cases which improperly invoke the federal securities laws and, additionally, exploit the vague language of the civil provisions of the federal anti-racketeering statute in an attempt to recoup investment losses.

Shearson now moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted in that (1) the complaint fails to plead fraud with the particularity required by Fed.R.Civ.P. 9(b); (2) the complaint improperly assumes the existence of an implied cause of action under the Rules of the New York Stock Exchange ("NYSE"), the American Stock Exchange ("AMEX") and the National Association of Securities Dealers ("NASD"); and (3) the complaint fails to state sufficient facts to sustain a claim under the Racketeer Influenced and Corrupt Organization Statute ("RICO"), 18 U.S.C. §§ 1961–68 (1976 and Supp. II 1978). Shearson also moves pursuant to Fed.R.Civ.P. 12(f) to strike plaintiff's claim for punitive damages.

The complaint alleges two causes of action, one under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and another under Section 1962(c) of RICO, 18 U.S.C. § 1962(c). The same set of facts purport to support both causes of action. For purposes of this motion the facts alleged in the complaint are assumed to be true and all inferences are construed in plaintiff's favor. Prior to January, 1980, the plaintiff, who is at an "advanced age" and retired, owned an unspecified amount of "blue chip" securities which he had acquired over the past thirty years. The dividend and interest income from these securities provided plaintiff with a "substantial portion of his income." Sometime in January 1980, plaintiff opened a customer account at the Shearson brokerage firm and transferred his portfolio of securities there. The account executive at Shearson responsible for Mauriber's account was defendant Judith LeWinter. Mauriber contends that the defendants Shearson and LeWinter "made and caused to be made misstatements and omissions of material facts and engaged in fraudulent and deceptive conduct and courses of business," complaint ¶ 17, including the following:

1. "in an atmosphere of high pressure tactics, defendants induced plaintiff to sign a Limited Discretionary Authorization which granted defendants discretionary power to buy and sell securities in plain-

tiff's account, without offering plaintiff the opportunity to read, reflect or ask meaningful questions with respect to said document, and by telling plaintiff that said document was merely necessary to transfer plaintiff's existing portfolio of securities over to his account with defendant Shearson." Complaint ¶ 17(b).

2. "defendants filled out, completed, reviewed and maintained possession of a Discretionary Account Information Statement on plaintiff's behalf, without consulting plaintiff or obtaining the relevant information from plaintiff. Said document contained several material misstatements of facts concerning plaintiff and his financial condition and investment objectives." *Id.*, ¶ 17(c).

3. "defendants failed to inform plaintiff that said Limited Discretionary Authorization granted defendants several powers, including, but not limited to, the power to act as plaintiff's agent . . . for purpose of buying and selling securities in plaintiff's account, . . . without first consulting plaintiff . . . ." *Id.*, ¶ 17(d).

4. Between January, 1980 and October, 1981, "defendants sold plaintiff's blue chip securities and caused plaintiff to make several cash payments into his account. With the proceeds of said sales and said cash payments, defendants purchased and sold, for plaintiff's account, various non-income producing securities which were of a high risk and speculative nature. Said purchases and sales involved in excess of 160 transactions over a short period of time, constituting excessive trading, and were designed to, and, in fact, did earn defendants substantial commissions, but caused plaintiff losses, expenses, costs and damages." *Id.*, ¶ 17(c).

5. "defendants knew that the high risk securities were unsuitable for plaintiff's financial needs and investment objectives." *Id.*, ¶ 17(f). "Despite this knowledge, defendants represented to plaintiff that it would be consistent with his needs and objectives to sell the securities." *Id.*, ¶ 17(g).

6. "defendants sold plaintiff's Anchor Growth Funds, and defendants told plaintiff that the sale price of said securities was approximately $11,000, when, in fact, the sale price was approximately $34,000." *Id.*, ¶ 17(i). Furthermore, "defendants failed to inform plaintiff that approximately $23,000 from the sale of plaintiff's Anchor Growth Funds was deposited into plaintiff's account by defendants and utilized to purchase unsuitable securities." *Id.*, ¶ 17(j).

7. Defendants failed to inform plaintiff that numerous purchases of securities for plaintiff's account were made on margin. *Id.* ¶ 17(k).

Plaintiff asserts that these actions constitute a Section 10(b) violation in that they involved misrepresentations and omissions, and furthermore, they constitute violations of NASD and NYSE "know your customer" and "suitability" of investments rules. Also, plaintiff alleges that these actions constitute violations of Section 1962(c) of RICO which proscribes *inter alia* any fraud in the sale of a security committed at least twice within a ten year period.

### 1. *The Section 10(b) Claim*

On its motion to dismiss, defendants' first objection to the complaint is that it fails to plead fraud with the particularity required by Fed.R.Civ.P. 9(b). Rule 9(b) states in part: "in all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity."

"To pass muster in this Circuit a complaint 'must allege with some specificity the acts constituting the fraud;' conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." *Decker v. Massey-Ferguson, Ltd.*, [current], 681 F.2d 111 (2d Cir. 1982), *quoting Rodman v. Grant Foundation*, 608 F.2d 64, 73 (2d Cir. 1979). In defendants' view, nearly every paragraph of the complaint fails to meet this standard.

After reviewing the complaint, I find that plaintiff's fraud allegations fail to meet the requirements of Rule 9(b). The Section 10(b) portion of the complaint can be divided into three categories: (1) misrepresentations by defendants to Mauriber; (2) churning; and (3) violations of the "know

your customer" and "suitability" rules of the NYSE and NASD. These categories will be scrutinized seriatim under the Rule 9(b) requirements.

The first category of fraud allegations takes several forms. Plaintiff asserts that he was induced through "high pressure tactics" to grant defendants discretionary power over his account. Defendants purportedly told the plaintiff that the document which he signed was merely necessary to set up the account at Shearson. The complaint fails to state, however, who made these "pressure" statements to the plaintiff and exactly when and where they were made.

The complaint further states that the defendants filled out and maintained a Discretionary Account Information Statement on plaintiff's behalf which contained misstatements of fact. But the complaint does not reveal these misrepresentations nor how plaintiff relied upon them to his detriment.

Next, the complaint alleges that defendants erroneously represented to the plaintiff that selling off his blue chip securities was consistent with his financial needs. Again, it is not clear who made these statements, when they were made and how they were made. *Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080 (S.D.N.Y.1977), *aff'd without op.*, 636 F.2d 1201 (2d Cir. 1980). A similar deficiency exists in the allegation that defendants told plaintiff that the sale price of his shares in Anchor Growth Funds was $11,000 instead of $34,000. Plaintiff is under a Rule 9(b) obligation when dealing with more than one defendant to specify which defendant told which lie and under what circumstances. Plaintiff is also obligated to name the defendant or defendants who allegedly failed to inform the plaintiff that securities were purchased on margin in plaintiff's account. For the foregoing reasons, paragraphs 16 and 17(a), (b), (c), (g), (i) are stricken from the complaint. These vague allegations of fraud fail to appraise the defendants of information which would be necessary to raise an intelligent defense.

■ The second category of fraud in the complaint is churning. Complaint ¶ 17(e), (k). Churning occurs when a broker disregards the client's investment objectives and engages in excessive trading for the purpose of generating commissions. To prevail on a claim of churning under Section 10b, an investor must prove: (1) excessive trading in light of his known investment objectives, (2) by a broker with discretion over his account, (3) who acts with the intent to defraud. *See Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318 (5th Cir. 1981). The complaint falls short of alleging enough facts to sustain a churning claim. The complaint does not describe the plaintiff's investment objectives nor why the trades made in his account between January, 1980 and October, 1981 were excessive. Furthermore, plaintiff does not state whether all or only part of the trades in this time period were unnecessary. Plaintiff should be able to describe more precisely its churning claim without further investigation.

■ The third category of fraud in the complaint alleges that the "defendants failed to inform plaintiff" that they had violated the "know your customer" and "suitability" rules of NASD, NYSE and AMEX, complaint ¶ 17(n). The invocation of these rules poses a separate problem. To the extent that this portion of the complaint purports to state independently a claim for Section 10(b) violation it must be dismissed. The law is clear that the mere violation of a rule of an exchange cannot, without more, constitute a violation of Section 10(b) or Rule 10b–5, *see Clark v. John Lamula Inv., Inc.*, 583 F.2d 594 (2d Cir. 1978); *Rolf v. Blyth Eastman Dillon*, 424 F.Supp. 1021 (S.D.N.Y.1977), *aff'd*, 570 F.2d 38 (2d Cir.), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978), and it cannot support an implied cause of action under Section 6 of the Securities Exchange Act of 1934. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980); *Picard v. Wall St. Discount Corp.*, 526 F.Supp. 1248 (S.D.N.Y.1981); *Klitzman v. Bache Halsey Stuart Shields, Inc.*, 499 F.Supp. 255 (S.D.N.

Y.1980).[1] To the extent the complaint mentions these rules as part of a course of conduct which amount to fraud, the rules, however, may form part of the complaint.

As part of plaintiff's broader allegation of fraud, the references to these rules contribute to the complaint's failure to comply with Rule 9(b). How the defendants specifically violated the Rules is not outlined nor is it explained how these violations amounted to a fraud upon plaintiff. For example, it is not enough to say, as paragraph 17(n) apparently does, that defendants failed to inform plaintiff that they had not learned the essential facts about a customer or a particular order. This is not necessarily fraud. Plaintiff must allege a specific intention by defendants to defraud and facts to support such an allegation. A complaint cannot merely state that a broker defendant failed to learn certain facts. Paragraph 17(n) does not even go this far and accordingly it must be stricken from the complaint for failure to comply with Rule 9(b). Although plaintiff will be granted leave to replead the Section 10(b) claim he may not depend upon a mere recitation of alleged violations of the exchange rules to establish his claim.

## 2.  *The RICO Claim*

RICO makes it unlawful (1) for any person to use or invest any income derived from "a pattern of racketeering activity . . . in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in . . . interstate or foreign commerce," 18 U.S.C. § 1962(a); (2) "for any person to acquire or maintain through a pattern of racketeering any interest in or control of any enterprise engaged in interstate or foreign commerce", *id.* § 1962(b); (3) "for any person employed by or associated with any enterprise engaged in . . . interstate . . . commerce, to

conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt," *id.* § 1962(c); and (4) "for any person to conspire to violate any of the above provisions." *Id.* § 1962(d).

In this case involving a broker's alleged fraud of a customer, only the third prohibition of Section 1962 appears applicable. It is plaintiff's contention that defendants' commission of "fraud in the sale of securities," 18 U.S.C. § 1961(1)(D), constitute a pattern of racketeering activities within the meaning of RICO. For such a pattern to exist, at least two acts of fraud must be committed within a ten year period. *Id.* § 1961(5).

This federal action was instituted in part under the civil provisions of RICO which permits a suit by "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). What is perhaps most significant about plaintiff's invocation of this statute is that if successful he can recover treble damages, costs and attorneys' fees. *Id.* The potency of this civil remedy serves to emphasize the legislature's determination to provide a comprehensive arsenal of weapons against the proliferation of organized crime. *See United States v. Turkette,* 452 U.S. 576, 588–90, 101 S.Ct. 2524, 2531–2532, 69 L.Ed.2d 246 (1981).

The potential for an award of treble damages to a RICO plaintiff has caused considerable consternation over the apparent breadth of the statute. In particular, it is not entirely clear whether Congress envisioned a civil RICO remedy for someone defrauded in the purchase or sale of a security where an apparent remedy already exists under the federal securities laws or whether the securities laws are intended to provide the victim's exclusive remedies. Several district courts have concluded that

1. Cases which hold that no private right of action exists for a violation of the exchange rules are not altered by the Supreme Court's recent decision in *Merrill-Lynch v. Curran,* —— U.S. ——, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982). In fact, the standards utilized in that case by the Court to find a private right of

action under the Commodity Exchange Act were similar to the standards used in those cases cited which found no private right of action under the exchange rules. *See, e.g., Picard v. Wall St. Discount Corp.,* 526 F.Supp. 1248 (S.D.N.Y.1981).

RICO applies only to situations where the defendants are involved in organized crime, especially where the civil plaintiffs have recourse through other federal laws. *See, e.g., Adair v. Hunt International Resources Corp.*, 526 F.Supp. 736 (N.D.Ill.1981) (plaintiffs were able to state claims under the federal securities law and the Interstate Land Sales Acts); *Landmark Savings & Loan v. Rhoades*, 527 F.Supp. 206 (E.D. Mich.1981) (securities fraud claim did not allege "racketeering enterprise injury"); *Waterman S.S. Corp. v. Avondale Shipyards, Inc.*, 527 F.Supp. 256, 260 (E.D.La. 1981) (plaintiff asserted viable antitrust claims and the court reasoned that the "civil . . . provisions of RICO were not designed to convert every fraud or misrepresentation action . . . into treble damages RICO actions"); *Noonan v. Granville-Smith*, 537 F.Supp. 23 (S.D.N.Y.1981) (federal securities fraud action RICO claim dismissed because there was no allegation that organized crime sought control over a business enterprise); *Barr v. WUI/TAS, Inc.*, 66 F.R.D. 109 (S.D.N.Y.1975) (plaintiff alleged unlawful price increases and price fixing and court dismissed RICO claim because defendant could not be characterized as "society of criminals"). Defendants urge that this line of cases renders RICO inapplicable to the situation at bar. This is a simple securities fraud case, according to defendants, involving a reputable broker and one disappointed customer—hardly the situation requiring a sanction created by Congress to eradicate the infiltration of organized crime into legitimate businesses.

■ I disagree with this simplistic approach. RICO does not require an allegation that organized crime is operating an enterprise through a pattern of racketeering activity. Such a requirement might, in fact, defeat the very purpose of the statute. RICO's definition of racketeering activity is broad and without explicit reference to "organized crime." Several reasons might explain why Congress chose not to include this in the statute. For one, "organized crime" is incapable of precise definition or identification. Moreover, in the words of one congressman, "to require a general showing

that organized crime is involved as a predicate for use of investigative techniques would be to cripple these techniques." 116 Cong.Rec. 35344 (October 7, 1970). The Act's purpose is to eliminate the penetration of organized crime and racketeering into legitimate business. S. Rep. No. 91–617 (1969). The civil remedies provide a useful tool in helping to rid society of organized crime by divesting "the association of the fruits of its ill-gotten gains." *United States v. Turkette*, 452 U.S. at 585, 101 S.Ct. at 2530. This does not mean, however, that plaintiffs have to await a criminal prosecution to bring a civil action in order to be sure the defendant is a criminal. *See Farmers Bank of Delaware v. Bell Mortgage Corp.*, 452 F.Supp. 1278 (D.Del. 1978). Organized crime presumably takes many clandestine forms. A plaintiff should not be forced to prove that a defendant is a part of a "society of criminals" before he can seek relief. Such a rule might emasculate the civil remedies' effectiveness as a deterrent to racketeering activity. Therefore, until Congress promulgates more precise language for the invocation of RICO's civil provisions, I am constrained to find that if the racketeering activity explicitly proscribed by the statute is proven, RICO damages may be awarded to the appropriate plaintiff without proof that the defendant is connected to organized crime. *Cenco, Inc. v. Seidman & Seidman* [Current] Fed. Sec.L.Rep. (CCH), ¶ 98,615 at p. 93,057, 686 F.2d 449 (7th Cir. 1982); *Maryville Academy v. Loeb Rhoades & Co., Inc.*, 530 F.Supp. 1061, 1069 (N.D.Ill.1981); *Engl v. Berg*, 511 F.Supp. 1146, 1155 (E.D.Pa.1981).

Further, I do not subscribe to defendants' argument that a securities fraud violation under Section 10(b) is never actionable under RICO. Racketeering activity under RICO specifically includes "fraud in the sale of securities." This leads to the inescapable conclusion that Congress intended there to be some overlap, and under the appropriate circumstances a violation of the securities laws may result in RICO liability. *See Spencer Companies, Inc. v. Agency Rent-A-*

*Car, Inc.,* [1981] Fed.Sec.L.Rep. (CCH), ¶ 98,361 (D.Mass. November 17, 1981); *Maryville Academy v. Loeb Rhoades, Inc., supra; Parnes v. Heinold Commodities, Inc.,* 487 F.Supp. 645 (N.D.Ill.1980).

In this case the RICO claim must fail for reasons not advanced by defendants. In Count II, the complaint alleges a violation of RICO by vaguely referring back to all of the preceding paragraphs that constitute the Section 10(b) violation. As earlier stated, the securities fraud allegations fail in numerous respects to comply with the specificity requirements of Fed.R. Civ.P. 9(b). Until such time as plaintiff adequately pleads fraud it will not be known whether a RICO violation is properly alleged. As a result, Count II of the complaint is dismissed with leave to replead within 20 days of the date hereof.

In sum, the entire complaint is dismissed and plaintiff is granted 20 days from the date hereof to replead.

SO ORDERED.