Douglas C. LANDRY, Paul C. Elliot, Daniel L. Rumelt, Kathie J. Class, Mitch Goldenberg, Samuel Friedman, Max Prager, Paul Englander and Fred Ex, Plaintiffs,

v.

PRICE WATERHOUSE CHARTERED ACCOUNTANTS and Price Waterhouse, Defendants.

PRICE WATERHOUSE CHARTERED ACCOUNTANTS, Third–Party Plaintiff,

v.

Richard J. BALL, Donald W. Reid, Marc R. E. Reid, Joseph H. Seguin, Gerald F. Brandman, Ronald W. Chisholm and Calgroup Graphics Corporation Ltd., Third–Party Defendants.

No. 87 Civ. 727 (DNE).

United States District Court, S.D. New York.

June 28, 1989.

Olwine, Connelly, Chase, O'Donnel & Weyher, New York City, for third-party plaintiff; James E. Tolan, Thomas Manick and Nancy Prahofer, of counsel.

Pavia & Harcourt, New York City, for third-party defendants; David A. Botwinik, Richard L. Mattiaccio and Steven Skulnik, of counsel.

## MEMORANDUM AND ORDER

EDELSTEIN, District Judge:

Third-party defendant Ronald W. Chisholm has moved this court for an order dismissing the third-party plaintiff's complaint on the grounds that this court lacks personal jurisdiction pursuant to Fed.R.Civ. P. 12(b)(2).

---

1. Price Waterhouse–US has been dismissed without prejudice as a defendant and is no longer a party in this action.

2. Following the transaction (on February 26, 1985), Gowganda changed its name to Calgroup Graphics Corporation, Ltd.

## BACKGROUND

The underlying action arises from an alleged fraud involving Calgroup Graphics Corporation, Ltd. ("Calgroup"), its directors and officers and Price Waterhouse Chartered Accountants ("Price Waterhouse Canada") and Price Waterhouse–US.[1] The alleged fraud focuses on a transaction between Gowganda Resources Inc. ("Gowganda")[2] and Reid Entertainment Corporation ("REC") in which Gowganda acquired REC and its film properties in exchange for common stock. Subsequently, this transaction resulted in an issuance of allegedly misleading financial statements of the newly named Calgroup Graphics Corporation, Ltd. ("Calgroup"), reported on by Price Waterhouse Canada ("PWC"), which artificially inflated the price of Calgroup stock.

The named plaintiffs sought to represent a class of individuals who purchased Calgroup stock during the period April 1, 1985 through September 23, 1985 in reliance on the defendant's allegedly false and misleading Auditor's Report and financial statements.[3] The Auditors Report was dated March 15, 1985 (for the year ended December 31, 1984) and the financial statements were dated June 28, 1985 (for the period ended March 31, 1985) and October 11, 1985 (the amended financial statements for the period ended March 31, 1985). The plaintiffs allege that the financial statements misrepresented that Calgroup had an additional 15 million dollars (Canadian) in assets as a result of a December 31, 1984 acquisition agreement.[4]

In its third-party complaint, PWC (defendant-third-party plaintiff) seeks contribution from third-party defendants, Calgroup and its directors, Richard J. Ball, Donald W. Reid, Marc R.E. Reid, Joseph H. Seguin, Gerald F. Brandman and Ronald W. Chisholm ("Chisholm").

---

3. In a decision on January 10, 1989, this court denied certification of the class. 123 F.R.D. 474.

4. These assets were reported as "hard assets" represented by film properties.

## FACTS

During 1984 and 1985, Chisholm, a Canadian barrister and solicitor, performed services relating to the December 31, 1984 agreement and additional services for and on behalf of Gowganda and/or REC. (Third–party Complaint ¶ 8). In the Information Booklet and Report to Shareholders of Gowganda Resources Inc., dated September 30, 1983, Chisholm was nominated to Gowganda's Board of Directors.[5] In addition, Gowganda's National Association of Securities Dealers Automated Quotations ("NASDAQ") listing was noted in the booklet. (Tolan Aff. ¶ 3, Exh. 1). On November 14, 1983, Chisholm was elected to Gowganda's Board of Directors. Due to a conflict of interest, Chisholm resigned his position the next day.[6] In its Notice of Annual Meeting, dated June 21, 1984, Gowganda submitted a Gowganda–REC transaction for shareholder approval and nominated Chisholm as a director of the corporation. (Tolan Aff. ¶ 3, Exh. 3). In the same notice it is reported that Chisholm had a "material interest" in the REC transaction, namely his interest in REC's holding company [7]. *Id.* The transaction contemplated in the June 21, 1984 notice was abandoned due to a problem with financing, and Chisholm was not elected to the Board of Directors.

Late in 1984, Chisholm's firm drafted an Amended Exchange Agreement between Gowganda and REC. The document stipulated that Gowganda would keep its NASDAQ listing and that Chisholm would be on the company's Board of Directors. (Tolan Aff. ¶ 9, Exh. 7). In an REC shareholder's Agreement dated March 22, 1985 it was stipulated that Chisholm would become a director of REC. (Tolan Aff. ¶ 10, Exh. 8). In addition, the REC Shareholder's Agreement noted that Chisholm held 2,000 shares of 589857 Ontario Inc. stock.[8]

The Gowganda–REC transaction was completed in March of 1985. On July 15, 1985 Chisholm's nomination to Calgroup's Board of Directors was reported in the company's Notice of Annual Meeting of Shareholders. (Tolan Aff. ¶ 11, Exh. 9). The notice also disclosed Chisholm's interest in Calgroup as 200,000 shares. *Id.* Chisholm was elected as a director of Calgroup at the August 29, 1985 shareholders meeting. (Tolan Aff. ¶ 12, Exh. 10).

After Chisholm's election to the Board of Directors the Ontario Securities Commission ("OSC") issued a cease-trade order against Calgroup on September 23, 1985. The next day, Calgroup requested that NASDAQ suspend trading of its shares. Calgroup and the OSC agreed that Calgroup would prepare an amended set of financial statements and if the statements met OSC approval, the stock would resume trading. The amended statements were prepared and the film properties were once again accorded a value of 15 million dollars (Canadian). The amended statements were signed by Chisholm for Calgroup and presented to the OSC. (Tolan Aff. ¶ 13, Exh. 11). The amended statements were not approved by the OSC and the trading suspension continued until December 23, 1986.

## PERSONAL JURISDICTION

In deciding this pretrial motion to dismiss for lack of personal jurisdiction, the court has considerable discretion. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). In order to defeat a motion to dismiss, the plaintiff "need make only a prima facie showing of jurisdiction

**5.** Information Booklet and Report to Shareholders of Gowganda Resources Inc., annexed to the Affidavit of James E. Tolan, sworn to February 22, 1988, as Exhibit 1. Hereinafter, referred to as "Tolan Aff. ¶ ___, Exh. ___".

**6.** Chisholm's affidavit indicates that he was representing Donald Reid at the time and was still negotiating the REC transaction with Gowganda. (Affidavit of Ronald W. Chisholm, sworn to

January 27, 1988 (hereinafter "Chisholm Aff. ¶ ___), at ¶ 9 n. 2).

**7.** REC's holding company was called 589857 Ontario Inc.

**8.** 589857 Ontario Inc., held fifty-one percent of REC's shares. Its directors included, Ronald W. Chisholm, Joseph H. Seguin, Richard J. Ball and Gerald F. Brandman.

through it own affidavits and supporting materials." [9] *Id.*

In securities cases, Section 27 of the Securities Exchange Act of 1934 [10] provides the statutory framework for personal jurisdiction. Section 27 has been read to extend the court's jurisdiction to the constitutional limits of due process. *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1340 (2d Cir.1972). The applicable jurisdictional standard is enunciated in § 37 of the *Restatement (Second) of Conflict of Laws* (1971). A court may exercise personal jurisdiction over a foreign defendant who causes an effect in the forum by an act committed elsewhere. *Rheingold v. Deloitte Haskins & Sells,* 599 F.Supp. 1241, 1259 (S.D.N.Y.1984) (citing *Leasco Data Processing Equipment Corp v. Maxwell,* 468 F.2d 1326, 1341 (2d Cir.1972)). However, "this is a principle that must be applied with caution, particularly in an international context." *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1341 (2d Cir.1972). Furthermore, the defendant, "must know, or have good reason to know, that his conduct will have effects in the state seeking to assert jurisdiction over him." *Id.*

Where a defendant is not present in a forum, it is within the court's power to assert jurisdiction over him where, "the defendant purposely avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Furthermore, jurisdiction is proper in a forum where a "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ The third-party plaintiffs have provided prima facie evidence that Chisholm knew or should have known that his actions would render him amenable to suit in the United States. Chisholm and the other third-party defendants invoked the benefit of trading Calgroup stock on the NASDAQ market in the United States. Gowganda's listing on NASDAQ was mentioned in its Information Booklet and Report to Shareholders, dated September 30, 1983. (Tolan Aff. ¶ 3, Exh. 1). The Amended Share Exchange Agreement between Gowganda and REC (dated November 5, 1984), required that Gowganda maintain its NASDAQ listing in the U.S. (Tolan Aff. ¶ 9, Exh. 7). This document is evidence that Chisholm knew, or should have known of the company's NASDAQ listing.

The defendant analogizes his situation with that of the defendant in *Bersch v. Drexel Firestone Inc.* 519 F.2d 974, 1000 (2d Cir.), *cert. denied, Bersch v. Arthur Andersen & Co.,* 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975). In *Bersch,* a Canadian underwriter was found to be beyond the reach of U.S. jurisdiction, because the Court found no evidence that the defendant knew that the stock at issue would be sold to U.S. citizens. *Id.* In the case at bar, there is strong evidence that Chisholm knew or at least should have known that the 1985 financial statements would affect Calgroup's stock price on the NASDAQ market.

As a shareholder in REC's holding company, a director of REC and a party to the REC shareholder's agreement, Chisholm knew, or should have known, that the value attributed to REC's assets transferred to Calgroup would affect the value of Calgroup's stock. Following the transaction, Chisholm's interest in REC's holding company would translate into indirect ownership of 200,000 shares of Calgroup stock.

**9.** "Eventually of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial." *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981).

**10.** The section provides in relevant part: "Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. 15 U.S.C. § 78aa (1982).

The third-party complaint (¶ 11), claims that Chisholm and the other third-party defendants were "control persons" within the meaning of section 20(a) of the Securities and Exchange Act of 1934 (15 U.S.C. § 78t(a), which provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder, shall also be liable jointly and severally with and to the same extent as such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

The statute has been read liberally and its "provisions were enacted to expand, rather than restrict the scope of liability under the securities laws." *Securities Exchange Commission v. Management Dynamics, Inc.,* 515 F.2d 801, 812 (2d Cir.1975).[11] The plaintiff's argument concerning Chisholm's involvement in REC and Calgroup demonstrates the requisite prima facie showing that he was a "control person" of Calgroup and thus amenable to suit in this forum.

The defendant refers to *Keene Corp. v. Weber,* 394 F.Supp. 787, 792 (S.D.N.Y.1975) in support of its argument that a lawyer merely rendering professional services outside the forum may not be found to be within the court's jurisdiction. In *Keene,* there was no evidence of any involvement by the lawyer other than in a professional capacity. *Id.* In the instant case, however, the plaintiff has made a showing that Chisholm was a behind the scenes player in the Calgroup–REC transaction and the management of Calgroup. As a result, he must have possessed knowledge that the transaction between Calgroup and REC would have an impact on Calgroup's stock trading both within and without the United States. *See Rheingold v. Deloitte Haskins & Sells,* 599 F.Supp. 1241, 1259–60 (S.D.N.Y.1984) (foreign defendant attorney subject to personal jurisdiction in the United States due to his involvement in disseminating information in the United States).

The third-party plaintiff points to the Amended Financial Statements (dated October 11, 1985), which were completed after Chisholm's election as a director and were signed by him, as evidence of jurisdictional contacts. The third-party plaintiff claims that Chisholm was "intimately involved, as a director, in the October 1985 restatement of Calgroup's March 31, 1985 financial statements." (Third-party plaintiff's Memorandum of Law in Opposition to Third-Party Defendant Ronald W. Chisholm's Motion to Dismiss, p. 11). This contention is not dispositive, because the financial statements, in order to be relevant to the jurisdictional question, must have been issued before or during the period of the alleged fraud (April 1, 1985 to September 23, 1985). (Class action complaint, ¶ 5). The complaint alleges that stocks were purchased in reliance on false and misleading financial statements. It is not plausible that any of the original plaintiffs could have bought stock in reliance on a document which was not released until after Calgroup voluntarily requested the suspension of trading of its stock on the NASDAQ (September 24, 1985). Therefore, the amended financial statements should be removed from the scope of the jurisdictional inquiry.

The third-party plaintiffs have made a prima facie showing of this court's jurisdiction over Chisholm. As a result of his knowledge of Gowganda's and Calgroup's NASDAQ listings, his involvement in REC and its holding company and his close relationship with Calgroup and its directors, this court has personal jurisdiction over Ronald W. Chisholm.

### CONCLUSION

For the reasons stated above, the third-party defendant, Ronald W. Chisholm's motion to dismiss is denied.

SO ORDERED.

---

11. Under this liberal reading, even "indirect means of discipline or influence short of actual direction" fulfill the statutory requirement.

*Myzel v. Fields,* 386 F.2d 718 (8th Cir.1967), *cert. denied,* 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968).