OPINION OF THE COURT
Henderson W. Morrison, J.
By order to show cause, the District Attorney of Nassau County seeks an order of this court enjoining a particular attorney from representing certain witnesses called to appear before a Nassau County Grand Jury. In addition, the District Attorney seeks to restrain a particular individual and a related corporation from retaining any other attorney to represent these witnesses. The attorney concerned opposes this application. In an effort to protect the secrecy of the *807 Grand Jury investigation, and to protect the persons involved, this opinion will not identify the parties unless required.
The Grand Jury and the District Attorney’s office are investigating the coupon redemption activities of a retail food sales corporation and its owners. In an effort to gather evidence, the District Attorney issued subpoenas to certain employees of the corporation, requiring their attendance before the Grand Jury. Before the witnesses were scheduled to appear, the “target” corporation retained counsel to represent them.
The attorney retained by the corporation met with the witnesses prior to their appearance before the Grand Jury. The attorney affirms, and the District Attorney does not deny, that he counseled the witnesses as follows:
“I explained the concepts of immunity, self-incrimination, perjury and contempt, and that they were obliged to answer all questions truthfully and responsively.
“I further explained to the witnesses that though the company had hired me to be available to them during their ordeal, no one was obliged to accept my services, and that I had no intention of foisting myself upon anyone. I also explained that regardless of whether they wanted to avail themselves of my services, since they had all been involved with the store’s coupons in one way or another, it would be imprudent of them not to speak with some lawyer. Each witness was further told that there was at least a hypothetical risk, in any situation where one attorney represents more than one client, that conflicts of interest could arise; but I offered my professional judgment that no such risk was lurking in this case, as none of them was a target and all would obtain complete transactional immunity from any state prosecution. I further informed the witnesses that if, for whatever reason, any witness preferred to obtain separate counsel, I would be able to secure an adjournment of their appearance until such counsel were ready to act in their behalf.”
The District Attorney alleges, and the attorney admits, that he further counseled his clients to tell the truth but not to provide additional information.
On the day the witnesses were scheduled to appear before the Grand Jury, the Assistant District Attorney making the presentment approached counsel for the witnesses. He requested that the witnesses’ attorney permit him to interview the witnesses prior to their appearance before the Grand Jury. The Assistant District Attorney characterized this as *808 "normal” procedure, designed to expedite the presentment. The Assistant District Attorney offered to provide each witness interviewed a "letter of nonprosecution”.
The witnesses’ counsel indicated that such a procedure was unacceptable. The witnesses were prepared to testify before the Grand Jury. However, counsel pointed out that a "letter of nonprosecution” was not the equivalent of immunity conferred by virtue of an appearance before the Grand Jury (CPL 190.40). Further, the witnesses were under no legal obligation to submit to interviews by the District Attorney.
The Assistant District Attorney concedes that a letter of nonprosecution is not the same as Grand Jury immunity but that the witnesses’ failure to comply with the "normal” procedure caused the Grand Jury presentment to be less cogent than would otherwise be possible.
Each of the witnesses subpoenaed testified before the Grand Jury. Each received immunity as provided by law. The Assistant District Attorney questioned the witnesses concerning the targets of the investigation. It appears that he may also have posed questions dealing with the relationship between the witnesses and their counsel. These questions apparently concerned fee arrangements, the instructions given the witnesses by counsel, and the willingness of the witnesses to speak directly with the District Attorney’s office.
Following this presentment, the term of that Grand Jury expired. The witnesses were recalled to testify before another Grand Jury. The witnesses summoned again appeared and testified. There is no allegation that any of the testimony elicited was less than candid.
As a final matter, it should be noted that counsel for the witnesses has supplied the court with 11 affidavits attested to by the witnesses he represents. Each affidavit declares that it is the affiant’s continued desire to be represented by the attorney concerned. The affiants confirm this attorney’s version of the instructions given them but they contradict the Assistant District Attorney’s assertion that the witnesses are willing to speak directly with him.
The District Attorney bases his prayer for relief on two principal points. First, it is argued that an attorney retained by corporation to represent its employees as witnesses before a Grand Jury is placed in a situation so compromised by conflict in loyalties that he should be disqualified. Second, the District *809 Attorney argues that the possibility that a conflict may arise should one or more of the witnesses perjure himself mandates disqualification of this counsel.
In fleshing out these arguments, the People focus on three principal areas where the conflicting loyalties they perceive may entangle witnesses’ counsel in violation of the American Bar Association Code of Professional Responsibility. These include the following:
(1) Fail to zealously represent the interests of his client. (ABA Code of Professional Responsibility, canon 7, DR 7-101.)
(2) Disclose attorney-client confidences. (ABA Code of Professional Responsibility, canon 4, DR 4-101.)
(3) Divide his loyalty between the witnesses he represents and the corporation which retained him. (ABA Code of Professional Responsibility, EC 5-14, DR 5-101, EC 5-15.)
It should be noted that the Assistant District Attorney has offered no evidence that the witnesses’ attorney has violated the provisions of the Code of Professional Ethics in any way.
To arbitrarily forbid a witness before a Grand Jury of counsel of his own choice, in the absence of some compelling State interest, unnecessarily obstructs the witness’ ability to enter private contractual arrangements for representation and deprives him of his constitutional right to due process of law. (Matter of Taylor, 567 F2d 1183.) "[A] court should not arbitrarily interfere with the attorney-client relationship” (People v Gomberg, 38 NY2d 307, 313).
Where it does appear that continued representation of multiple clients would be improper, a court may bar an attorney from continuing such a relationship. (Matter of Vera, 49 AD2d 883.) Where the representation concerns a Grand Jury proceeding, the public’s right to a thorough investigation of criminal activity must be considered as well as the client’s right to conflict-free representation. (See Matter of Gopman, 531 F2d 262.)
The District Attorney is a proper party to seek such relief. "When the propriety of professional conduct is questioned, any member of the Bar who is aware of the facts which give rise to the issue is duty bound to present the matter to the proper forum, and a tribunal to whose attention an alleged violation is brought is similarly duty bound to determine if there is any merit to the charge.” (Estates Theatres v Columbia Pictures Inds., 345 F Supp 93, 98; see, also, Matter of *810 Investigation Before Feb. 1977 Lynchburg Grand Jury, 563 F2d 652.)
The court, in its discretion, may disqualify an attorney from continuing to represent multiple clients where there is a probability of conflicting or inconsistent defenses (United States v Bernstein, 533 F2d 775), where some of the clients and the attorney are targets of a Grand Jury investigation (Matter of Investigation Before Feb. 1977 Lynchburg Grand Jury, supra), or where the attorney’s continued representation may affect his ability to advise his clients or where such representation would prevent the proper functioning of the Grand Jury. (Matter of Gopman, supra). If, however, no demonstrable conflict exists, or if the possibility of conflict is remote the application will be denied. (Matter of Taylor, 567 F2d 1183, supra; Matter of Vera, supra.)
As noted earlier, the District Attorney argues that an attorney retained by a corporation to represent several employees must necessarily be so torn by conflicting interests as to prevent him from effectively representing his witness-clients. As a result of the conflicting interests, it is argued, the attorney may be forced to compromise his professional ethics. The first supposed breach would be a failure to zealously represent the interests of the witnesses.
This particular branch of the application contains an internal inconsistency which demonstrates that this application is not solely motivated by the District Attorney’s otherwise laudable desire to prevent violations of the Code of Professional Responsibility. The District Attorney argues that the refusal of the witnesses’ counsel to permit interviews outside the Grand Jury has impaired the Grand Jury’s investigation, because it interferes with the People’s "normal” procedure. Nevertheless, the District Attorney seeks disqualification because the representation afforded by witnesses’ counsel may be inadequate due to conflicts arising from the fee arrangement. Thus, the attorney’s determined efforts to preserve his clients’ immunity become, in the District Attorney’s view, grounds for his disqualification, as evidence of his divided loyalty. It should be noted that this backhand compliment to counsel’s skill involves no allegation that his advice was intended to frustrate the function of the Grand Jury. Rather it appears that counsel’s advice was designed to protect his client’s interests and may have, incidentally, complicated the task of the District Attorney.
*811 In a case involving a similar application, the District Court for the Northern District of Illinois noted: "The Government Attorney has further stated that the harmful effects inherent in Thibodeau’s multiple representation 'are most clearly evidenced by Mr. Thibodeau’s refusal to allow non-subject witnesses to testify or discuss this matter with government investigators without a formal grant of immunity from prosecution’ and that 'such insistance clearly tends to obstruct this grand jury’s investigation to the manifest advantage of Mr. Thibodeau’s other clients.’ However;, there is no evidence at this time that Thibodeau’s advice to his non-subject witnesses was actually contrary to their best interests; that such advice would not have been given by another attorney who did not also represent a subject witness; or that such advice was purposefully given so as to obstruct the grand jury’s investigation and/or to protect others of his clients who were deemed subjects. Notwithstanding the effects of his advice, Thibodeau should not be disqualified because of 'unsubstantiated’ claims of conflicting interests, Liddy, supra, 348 F. Supp. at 200, or because his legal advice merely displeases the Government Attorney or the grand jury.” (Matter of Special Feb. 1975 Grand Jury, 406 F Supp 194, 199.)
The People further argue that the attorney’s admonition to the witnesses to be candid, without volunteering information, demonstrates his conflicting loyalties. The People séem to overlook the fact that testimony volunteered by witnesses falls outside of the scope of immunity granted by statute. (CPL 190.40, subd 2, par [b].) The advice given by counsel is fully consonant with his duty to protect the interests of the witnesses. There is simply no evidence to suggest that the representation afforded the witnesses was less than that required under the circumstances.
The People next argue that the conflicting loyalties may lead the attorney to divulge client confidences to the corporation. This, of course, would be a direct breach of the disciplinary rules contained in the ABA Code of Professional Ethics. (DR 4-101.) There is no evidence whatsoever to suggest that the witnesses’ counsel engaged in such a practice. Further, counsel affirms that no such disclosure has or will take place. "It may properly be assumed that an attorney will not perjure himself, nor deliberately act in violation of the Code of Professional Responsibility.” (People v Gomberg, 38 NY2d 307, 314, supra.)
*812 Concerning the confidentiality of attorney-client relationships, a few more comments are appropriate. In the absence of any Grand Jury minutes, it is impossible to determine precisely what questions were directed to the witnesses. However, the Assistant District Attorney’s affidavit contains certain statements concerning the relationship between the witnesses and their attorney. It further appears that the Assistant District Attorney may have asked the witnesses whether they would speak directly with him, notwithstanding counsel’s refusal to permit interviews outside of the presence of the Grand Jury. Such interference with the attorney-client relationship may itself constitute a breach of the Code of Professional Responsibility. (ABA Code of Professional Responsibility, EC 7-18, DR 7-104; cf. People v Hobson, 39 NY2d 479.) "[A]n attempt to secure a waiver of the right of counsel in a criminal proceeding in the absence of a lawyer, already retained or assigned, would constitute a breach of professional ethics, as it would be in the least-consequential civil matter” (People v Hobson, supra, p 484).
 The Assistant District Attorney’s next argument is related to the previous ones. It is urged that an attorney retained by a corporation to represent employee witnesses must necessarily be torn by divided loyalties to the extent that his continued representation of the witnesses is improper, on its face. Canon 5 of the ABA Code of Professional Responsibility would seem to indicate otherwise. The applicable provisions listed below clearly permit such a practice provided the relevant provisions of the code are observed.
canon 5
"A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client
ETHICAL CONSIDERATIONS
"EC 5-1. The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client.
"EC 5-18. A lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a *813 stockholder, director, officer, employee, representative, or other persons connected with the entity. In advising the entity, a lawyer should keep paramount its interests and his professional judgment should not be influenced by the personal desires of any person or organization. Occasionally a lawyer for an entity is requested by a stockholder, director, officer, employee, representative, or other person connected with the entity to represent him in an individual capacity; in such case the lawyer may serve the individual only if the lawyer is convinced that differing interests are not present. (Emphasis supplied.)
"EC 5-19. A lawyer may represent several clients whose interests are not actually or potentially differing. Nevertheless, he should explain any circumstances that might cause a client to question his undivided loyalty. Regardless of the belief of a lawyer that he may properly represent multiple clients, he must defer to a client who holds the contrary belief and withdraw from representation of that client. (Emphasis supplied.)
DESIRES OF THIRD PERSONS
"EC-21. The obligation of a lawyer to exercise professional judgment solely on behalf of his client requires that he disregard the desires of others that might impair his free judgment. The desires of a third person will seldom adversely affect a lawyer unless that person is in a position to exert strong economic, political, or social pressures upon the lawyer. These influences are often subtle, and a lawyer must be alert to their existence. A lawyer subjected to outside pressures should make full disclsoure of them to his client; and if he or his client believes that the effectiveness of his representation has been or will be impaired thereby, the lawyer should take proper steps to withdraw from representation of his client. (Emphasis supplied.)
"EC 5-23. A person or organization that pays or furnishes lawyers to represent others possesses a potential power to exert strong pressures against the independent judgment of those lawyers. Some employers may be interested in furthering their own economic, political, or social goals without regard to the professional responsibility of the lawyer to his individual client. Others may be far more concerned with establishment or extension of legal principles than in the immediate protection of the rights of the lawyer’s individual *814 client. On some occasions, decisions on priority of work may be made by the employer rather than the lawyer with the result that prosecution of work already undertaken for clients is postponed to their detriment. Similarly, employer may seek, consciously or unconsciously, to further its own economic interests through the actions of the lawyers employed by it. Since a lawyer must always be free to exercise his professional judgment without regard to the interests or motives of a third person, the lawyer who is employed by one to represent another must constantly guard against erosion of his professional freedom. ” (Emphasis supplied.)
These ethical considerations are aspirational in character. In contrast, adherence to the Disciplinary Rules contained in the code is mandatory.
"DR 5-105. Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer
"(A) A lawyer shall decline preferred employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105 (C).
"(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105 (C).
"(C) In the situations covered by DR 5-105 (A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each. (Emphasis supplied.)
"(D) If a lawyer is required to decline employment or to withdraw from employment under DR 5-105, no partner or associate of his or his firm may accept or continue such employment.”
Witnesses’ counsel appears to have fully satisfied the requirements contained in the code. He advised the witnesses of *815 the circumstances of their relationship. There is no evidence of any improperiety. He has competently represented his clients and there is no indication that the fee arrangement generated any divided loyalties. In the absence of any demonstrated conflict, and there being no evidence of improperiety, there is no reason to disqualify witnesses’ counsel because the witnesses’ employer chose to underwrite the cost of their representation. (In accord see Matter of Special Feb. 1975 Grand Jury, 406 F Supp 194, supra; Matter of Grand Jury, 446 F Supp 1132.)
The People’s final argument concerns potential conflicts arising as a result of the representation of more than one witness. Several additional sections of the ABA code are applicable and, of course, DR 5-105 applies.
INTERESTS OF MULTIPLE CLIENTS
"EC 5-14. Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant.
"EC 5-15. If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests. If a lawyer accepted such employment and the interests did become actually differing, he would have to withdraw from employment with likelihood of resulting hardship on the clients; and for this reason it is preferable that he refuse the employment initially. On the other hand, there are many instances in which a lawyer may properly serve multiple clients having potentially differing interests in matters not involving litigation. If the interests vary only slightly, it is generally likely that the lawyer will not be subjected to an adverse influence and that he can *816 retain his independent judgment on behalf of each client; and if the interests become differing, withdrawal is less likely to have a disruptive effect upon the causes of his clients.
"EC 5-16. In those instances in which a lawyer is justified in representing two or more clients having differing interests, it is nevertheless essential that each client be given the opportunity to evaluate his need for representation free of any potential conflict and to obtain other counsel if he so desires. Thus before a lawyer may represent multiple clients, he should explain fully to each client the implications of the common representation and should accept or continue employment only if the clients consent. If there are present other circumstances that might cause any of the multiple clients to question the undivided loyalty of the lawyer, he should also advise all of the clients of those circumstances.”
The District Attorney argues that a conflict might arise if the one or more of the witnesses committed perjury, or refused to testify. As noted earlier, the witnesses have already testified following a grant of immunity. There is no suggestion that they will refuse to appear in the future. Finally, there is no suggestion that any of the testimony elicited was less than candid. On these facts, it is difficult to see how the conflict which concerns the People can be considered possible much less potential. Further, counsel has recognized his duty to withdraw should any conflict arise (DR 5-105). Accordingly, an order disqualifying counsel at this point would be premature (in accord see Matter of Taylor, 567 F2d 1183, supra).
Based upon the foregoing, this application is denied with leave to renew should circumstances warrant.