OPINION OF THE COURT
Archie Gorfinkel, J.
This court in its capacity as supervisory Judge over Grand Jury matters in Bronx County, is being called upon to rule on a difficult, vexatious problem with unknown ramifications.
The District Attorney alleges that on July 13,1979, at about 11:15 p.m., a "911” (call to police) went over the air of a robbery in progress at a grocery store located on Webster Avenue in The Bronx. Initially two officers responded and then eight more. Apparently after a preliminary investigation a suspect was taken into custody, named Louis Rodriguez, *154 charged with attempted robbery, a felony. The arrest is alleged to have occurred about 11:30 p.m. on the street and the suspect arrived with the police at the 46th Precinct by 11:40 p.m. The suspect was declared dead in his cell at the 46th Precinct at 3:02 a.m. The cause of death was multiple abrasions and contusions with internal injuries, i.e., dead of a beating.
The District Attorney then proceeded to submit this matter concerning the death of the suspect to the October C Grand Jury. The 10 officers who were on the scene at the time of arrest were duly subpoenaed to appear before the Grand Jury.
They all appeared with the same counsel, Hartman & Lerner, 100 Church Street, New York City. All refused to speak to the Assistant District Attorney before entering the Grand Jury room (as is the normal practice with all witnesses) and all refused to sign waivers of immunity which is their right.
The District Attorney then applied by order to show cause to this court for an order enjoining the law firm of Hartman & Lerner from further representing all of the police-witnesses.
Preliminarily, before any sort of decision could be made, this court ordered in all 10 police witnesses, each to be interviewed behind closed doors with only the court reporter and the witness to be interviewed, present. (Parenthetically, the District Attorney objected to this in camera proceeding but since the proceeding concerns a pending Grand Jury investigation, the objection was given short shrift. One would think that a District Attorney, of all people, would want to keep the secrecy of these matters inviolate.)
Each witness was asked the following questions:
(1) Has a lawyer from the law firm personally interviewed the witness above?
(2) Has the conversation been specific as to the witness’ participation or nonparticipation?
(3) Will the witness speak to the District Attorney alone before he enters the Grand Jury room?
(4) Who is paying the legal fee?
(5) Have all of the witnesses agreed to the same course of action?
Nine of the 10 officers were thus examined (the 10th was on vacation and since a clear pattern had evolved, his appearance was thereafter excused). Out of the nine examined, four had *155 not had any personal communication with a lawyer from the firm alone. Necessarily as to those, the second question became moot. Seven out of the nine would not speak to the District Attorney alone before entering the Grand Jury room each citing advice of counsel. All agreed that the Policemen’s Benevolent Association is paying the legal fee apparently from a fund set up for that purpose. All agreed that they have taken this united stand together.
From the facts and circumstances surrounding the death of Louis Rodriguez, we are thus confronted with this united front entered into freely by virtue of the First Amendment, right of free association, and Sixth Amendment, right of counsel of one’s own choosing.
It is here, axiomatic, that amongst the 10 officer-witnesses some may be ultimate Grand Jury targets while some may be only nonparticipatory witnesses. The District Attorney quite properly raises the question of conflict of interest with the law firm of Hartman & Lerner.
The threshold question — does this court, as supervisory Judge over Grand Jury matters in Bronx County, have the right to order each of these witnesses to hire separate legal counsel and thereby forfeit Hartman & Lerner’s right to practice law in this matter completely?
There have been a number of cases wherein a similar application has been made to a supervisory Judge over Grand Juries by a prosecutor to proscribe legal representation by witnesses’ counsels. Most of them, as here, involve witnesses who belong to the same union or trade association and the commonality of purpose is apparent.
See Matter of Gopman (531 F2d 262) involving union officers who were called as witnesses and represented by the union retained lawyer. The issue before the Grand Jury was one of corruption by the officers against the union which supplied its lawyer to the officer-witnesses. There the court clearly ruled that the union officers must retain their own counsel and the court had every right to make that order because of the obvious conflict of interest. "Whatever the eventual outcome, appellant had placed himself in a situation where conflicting loyalties could affect his professional judgment. * * * We hold only that the public interest in a properly functioning judicial system must be allowed to prevail in the case presently before us. Appellant has placed himself in a clear conflict situation from which the district court had the duty to rescue both the *156 lawyer and his clients.” (Matter of Gopman, supra, at pp 267-268.)
The most telling case which most nearly approximates the instant one arises out of a Grand Jury investigation concerning charges of police corruption in the City of Philadelphia. Twelve police officers appeared before a Grand Jury, all with the same lawyer retained by the local Fraternal Order of Police. The supervisory Judge ordered the lawyer to step down from the case and a writ of prohibition was taken out in the next appellate court against that judicial order. "If an attorney and his associate represent more than one of the officers who have been called to testify, where, as the Special Prosecutor alleges, each officer will be called to testify as to the activity of the other officers, an impermissible conflict purportedly exists. The other potential for conflict arises from the attorney-client relationship between Pirillo and the Fraternal Order of Police, since the organization may have interests adverse to the best interests of the testifying officers.” (Pirillo v Takiff, 462 Pa 511, 524.)
In discussing the competing interests between the Sixth Amendment rigfit to counsel of one’s own choice, the First Amendment right to freely associate as against the interests of the State through its Grand Jury, the court said (at p 530): "The court in its supervisory capacity over the grand jury must be alert to prevent as far as possible any abridgment of that body’s function which is to investigate public wrongs and to bring indictments for the protection of society. The secrecy surrounding grand jury proceedings is a mechanism to insure the safety and reputation of witnesses and grand jurors. The historical and statutory power of courts to regulate the legal profession is one which is inherent in the power to oversee the administration of justice. Surely this power serves the interest of all citizens of the Commonwealth to be secure against the actions of attorneys, subservient to clients with competing interests.” (See, also, Matter of Grand Jury Empaneled, January 21, 1975, 536 F2d 1009; People v Doe, 98 Misc 2d 805; Matter of Investigation Before February, 1977, Lynchburg Grand Jury, 563 F2d 652; Matter of Investigation Before April 1975 Grand Jury, 531 F2d 600.)
The inescapable conclusion from the facts in this case and the applicable law is that a paramount right of the Grand Jury exists in this instance which takes precedence over the *157 individual rights of the officer-witnesses pursuant to the First and Sixth Amendments.
Accordingly, it is ordered:
(1) Each officer-witness, if he chooses, may retain counsel, but not from the law firm of Hartman & Lerner.
(2) Hartman & Lerner or any of their associates are enjoined from representing any of the officer-witnesses in this proceeding.
(3) No lawyer thus retained may be recommended directly or indirectly by Hartman & Lerner.
As to whether any of the officer-witnesses may want to execute waivers of immunity is between the officer and his conscience. Neither this court nor any other can compel otherwise.