■ NAREL APPAREL LTD., INC., Appellant-Respondent, v AMERICAN UTEX INTERNATIONAL et al., Respondents-Appellants. — In an action, *inter alia,* for an accounting of commissions allegedly due, and to recover said amount, plaintiff appeals from an order of the Supreme Court, Nassau County (Kelly, J.), dated January 13, 1982, which denied its motion for a default judgment and an inquest and granted that portion of defendants' cross motion which sought a dismissal of the action pursuant to CPLR 3215 (subd [c]). Defendants cross-appeal from the failure of the court to have addressed that branch of their cross motion which sought to disqualify plaintiff's attorney. Order modified, on the law, by adding thereto a provision that plaintiff's attorney, Myron Levenstein, is disqualified from representing plaintiff in this or any subsequent proceeding against defendants involving the causes of action set forth in the instant complaint. As so modified, order affirmed, without costs or disbursements. Special Term properly dismissed the complaint for want of prosecution since plaintiff, Narel Apparel Ltd., Inc. (hereinafter Narel), failed to show a legally justifiable excuse for its failure to enter judgment against defendants within one year after their default (CPLR 3215, subd [c]; *Winkelman v H & S Beer & Soda Discounts,* 91 AD2d 660). The failure to address that branch of defendants' cross motion which sought the disqualification of Narel's attorney was error, however, inasmuch as the period of limitation within which Narel may pursue its claims has not yet expired. Narel is the former exclusive sales representative for women's clothing of defendant manufacturers. It seeks to recover commissions allegedly due it for the period from December 31, 1978 through July 27, 1979, as well as damages for the loss of trade, customers, business and reputation sustained through defendants' breach of their agreement with Narel and their attempts to interfere with and destroy the effective unified operation of Narel's business. Narel's sole shareholders, until approximately January, 1980, were Ned Klebanoff, Harvey Turkheimer and Robert Pierce. In that month, Turkheimer and Pierce sold their shares and Klebanoff became the sole shareholder of Narel. Pierce and Turkheimer incorporated to form the Hamlet Group (hereinafter Hamlet), which supplanted Narel as sales agent for defendants' women's clothing division in August, 1980. Myron Levenstein acted as both the attorney and accountant for Narel when it was working on behalf of defendant American Utex. Additionally, Levenstein acted as personal attorney and accountant for Messrs. Pierce, Klebanoff and Turkheimer, having performed such services as preparing all of their income tax returns and drafting wills for Turkheimer and Pierce. In sum, Levenstein and his trio of clients ofttimes discussed personal and business matters and he served in the general capacity of advisor and confidant to them. In November, 1979, when Klebanoff indicated that he no longer wished to remain a sales representative, although he wished to retain the corporate existence of Narel, Levenstein drafted the termination agreement. Levenstein participated in meetings with Klebanoff, Pierce and Turkheimer and served as moderator of the parties' discussions. Among the specific topics discussed was Narel's claims against American Utex for unpaid commissions, one of the issues raised by

Narel in this action. In December, 1979 Levenstein prepared the necessary papers to incorporate Hamlet on behalf of Turkheimer and Pierce. He was then and still is on a monthly retainer with Hamlet for legal and accounting services. Furthermore, Levenstein still remains the personal attorney and accountant for all three parties and continues to serve in that capacity as well for Narel, which has again become an ongoing business. Should the matter reach trial, Turkheimer and Pierce are likely to be defendants' principal witnesses. For all intents and purposes, they *are* the ladies' division of American Utex insofar as the issues raised by the complaint are concerned. The standards of professional ethics dictate that a party "and indeed the public at large, are entitled to protection against the appearance of impropriety and the risk of prejudice attendant on abuse of confidence, however slight" (*People v Shinkle,* 51 NY2d 417, 421; *Cardinale v Golinello,* 43 NY2d 288, 295; see Code of Professional Responsibility, canon 9). It is not essential that there be proof positive that confidential information will necessarily be disclosed in the course of the litigation. A "reasonable probability of disclosure" should be sufficient (*Greene v Greene,* 47 NY2d 447, 453). Doubts as to the existence of an asserted conflict of interest are to be resolved in favor of disqualification (*Westinghouse Elec. Corp. v Gulf Oil Corp.,* 588 F2d 221, 225). In this instance, Levenstein might well be placed in a position whereby he would be cross-examining his own clients. The scope of cross-examination could extend quite possibly to confidential matters, knowledge of which had been acquired by Levenstein as attorney for the witnesses individually and for Hamlet. The fact that its attorney had been in a position to learn confidential information concerning defendants' witnesses would afford plaintiff an unfair advantage (see *Colonie Hill v Duffy,* 86 AD2d 645; *Coffelt v Shell,* 577 F2d 30). An attorney should "not be permitted to put himself in a position where, even unconsciously he will be tempted to 'soft pedal' his zeal in furthering the interests of one client in order to avoid an obvious clash with those of another" (*Estates Theatres v Columbia Pictures Inds.,* 345 F Supp 93, 99). Considering the totality of the circumstances, Levenstein should be disqualified as plaintiff's attorney of record based upon the appearance of impropriety. Gibbons, J. P., O'Connor, Weinstein and Brown, JJ., concur.