Ron COMO, Arlene Bieler, Edith W. Forrester, Steve Friedland, Robert Friedlander, Dorothy Friedlander, Dominick Maita, Robert Margolies, Moria Company and Stan Zerner, Plaintiffs,

v.

COMMERCE OIL COMPANY, INC., Sam J. Lewis, Jr., William D. Goodwin, Miller Contract Drilling, Inc., Deloit Miller and Derwin R. Clary doing business as D.R. Clary Drilling and Production, Defendants.

No. 84 Civ. 0506 (JFK).

United States District Court, S.D. New York.

March 26, 1985.

James A. Moss, Peter C. Kirschenbaum, Herrick, Feinstein, New York City, for plaintiffs.

William D. Goodwin, Crossville, Tenn., for Commerce defendants.

Jeffrey R. Mann, Carol M. Roberts, Rubin Baum Levin Constant & Friedman, New York City, for Miller defendants.

## OPINION and ORDER

### KEENAN, District Judge:

Plaintiffs allege that defendants engaged in fraudulent activities in connection with the sale of securities in oil drilling operations in Tennessee and Kentucky. Defendant Goodwin moves to dismiss plaintiffs' claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (1982) ("RICO"). He also moves to disqualify plaintiffs' counsel and to dismiss the action, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, for improper venue. Defendants Deloit Miller and Miller Contract Drilling, Inc. (collectively the "Miller defendants") move

to dismiss the complaint for lack of personal jurisdiction and on the ground of improper venue. For the reasons stated below, the Miller defendants' motion to dismiss and Goodwin's motion to dismiss the RICO claim are granted. Goodwin's other motions are denied.

## BACKGROUND

Plaintiff Ron Como, a New Jersey resident, is President of Ron Como & Associates, a New York corporation engaged in corporate public relations. The other individual plaintiffs are New York or New Jersey residents who invested in the oil exploration projects at issue in this case. Moria Company is a New York partnership that also invested in the projects.

Defendant Commerce Oil Company ("Commerce") is a Utah corporation with its principal place of business in Nashville, Tennessee. Sam Lewis, Jr., ("Lewis") is a Nashville resident who is chairman of the board of directors of Commerce. William D. Goodwin ("Goodwin") is a Nashville resident who is president of Commerce. Miller Contract Drilling, Inc. ("Miller Drilling") is a Tennessee corporation that was involved with the oil drilling operations at issue in this case. Defendant Deloit Miller ("Miller") is a Tennessee resident and president of defendant Miller Drilling. Derwin R. Clary ("Clary Drilling") is a Tennessee resident doing business as D.R. Clary Drilling and Production.

In February 1981, Como came into contact with Lewis and Goodwin who, as representatives of Commerce, sought financing from Como for Commerce's oil exploration projects. (Amended Complaint ¶ 20–21). In July 1981, Como agreed to purchase 25% of Commerce's assignable interest in the underlying oil and gas leases for several adjacent parcels in eastern Tennessee ("Ratliff Lease"). The agreement to buy the Ratliff parcels was negotiated at a meeting attended by Lewis, Como and William Drubel ("Drubel"), an associate of Como, in Como's New York office. Como

paid Commerce $113,000 pursuant to the Ratliff Lease. (Amended Complaint ¶ 21).

At this meeting, an agreement was also reached calling for Como to invest $27,500 in a new oil well known as the "Plateau Properties # A–Z well." Como made this payment as well. (Amended Complaint # 22). At the July 1981 meeting in New York, the principals also discussed the financing of several other operations known as the "Investor Wells." (Amended Complaint ¶ 23).

In order to induce Como to enter the Ratliff Lease Agreement and to finance the Investor wells, Goodwin and Lewis allegedly made a series of materially false and misleading statements to Como and Drubel during the period from July 1981 to August 9, 1982. The statements involved the actual production of existing wells in the Ratliff Lease area and the anticipated production of the Investor wells. (Amended Complaint ¶ 24). These misstatements allegedly were made at the July 1981 meeting in New York, and in letters sent from Nashville to New York and telephone calls between the same cities. (Amended Complaint ¶¶ 26, 30–31).

In November 1983, Commerce sued Como in Tennessee state court for breach of contract. On January 16, 1984, Como counterclaimed for fraud. One week later, Como and the other plaintiffs filed the instant action alleging claims virtually identical to those in his counterclaim in Tennessee. (Affidavit of Jeffrey Mann ¶¶ 5–11).

Plaintiffs' first claim alleges that defendants Commerce, Lewis and Goodwin made material misrepresentations in connection with plaintiffs' investments in violation of 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.-10b–5 promulgated thereunder. Plaintiffs' second claim, which is against the same defendants, alleges a violation of RICO. Plaintiffs' third, fourth and fifth claims, also against Commerce, Lewis, and Goodwin, are allegations of fraud under state law. The sixth, seventh, and eighth claims allege breach of contract against Commerce, the Miller defendants and Clary Drilling, respectively. The ninth claim is made against all defendants for common law fraud.

## DISCUSSION

### 1. RICO

█ Defendant Goodwin has moved to dismiss plaintiffs' RICO claim for failure to state a claim upon which relief can be granted. In *Sedima, S.P.R.L. v. Imrex Co.*, 741 F.2d 482 (2d Cir.1984), *cert. granted*, — U.S. ——, 105 S.Ct. 901, 83 L.Ed.2d 917 (1985), and its two companion cases, *Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir.1984); *Furman v. Cirrito*, 741 F.2d 524 (2d Cir.1984), the Second Circuit ruled that a civil claim under RICO will not lie absent (1) an allegation of a racketeering injury, 741 F.2d at 496, and (2) predicate criminal convictions, *id.* at 503. The Second Circuit stated that defendants in "garden-variety" fraud cases are not within the reach of civil claims under RICO. *Id.*

The instant case alleges garden-variety fraud. There is no allegation that plaintiffs suffered a racketeering injury or that defendants have been convicted of the predicate criminal acts.

Accordingly, plaintiffs' RICO claim against Commerce, Lewis and Goodwin is dismissed.[1]

### 2. *Personal Jurisdiction*

█ The Miller defendants move to dismiss the claims against them for lack of personal jurisdiction. Plaintiffs assert that this Court has jurisdiction under New York Civil Practice Law & Rules § 301. Section 301 provides jurisdiction over foreign corporations that do business in New York. The New York Court of Appeals recently

---

**1.** The Court is aware that the Supreme Court has agreed to review the Second Circuit's determination in *Sedima.* — U.S. ——, 105 S.Ct. 901, 83 L.Ed.2d 917 (1985). Nonetheless, unless and until *Sedima* is reversed, this Court is bound by it. Should it be reversed while this action is still pending, the Court would consider a motion by plaintiff to amend his complaint to add the RICO claims that we are dismissing today.

set forth the standard for exercising jurisdiction under § 301:

> Under CPLR 301 "the authority of the New York courts [to exercise jurisdiction over a foreign corporation] is based solely on the fact that the defendant is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction".... The test, though not "precise" ... is a "simple pragmatic one": is the aggregate of the corporation's activities in the State such that it may be said to be "present" in the State "not occasionally or casually, but with a fair measure of permanence and continuity" ... and is the quality and nature of the corporation's contacts with the state sufficient to make it reasonable and just according to "traditional notions of fair play and substantial justice" that it be required to defend the action here....

*Laufer v. Ostrow,* 55 N.Y.2d 305, 449 N.Y. S.2d 456, 458, 434 N.E.2d 692, 694 (1982) (citations omitted). The Court of Appeals went on to state that "[s]olicitation of business alone will not justify a finding of corporate presence in New York with respect to a foreign manufacturer or purveyor of services." *Id.* 449 N.Y.S.2d at 459, 434 N.E.2d at 695. However, where there are activities of substance beyond mere solicitation, there can be a finding of corporate presence.[2] *Id.; see, e.g., Bryant v. Finnish National Airlines,* 15 N.Y.2d 426, 260 N.Y.S.2d 625, 627–28, 208 N.E.2d 439, 441–42 (1965) (doing business with solicitation, office, office staff and bank account in New York).

The facts of this case, even to the extent ambiguities have to be resolved in plaintiffs' favor, *Lovebright Diamond Co. v. Spragins,* 574 F.Supp. 76, 79 (S.D.N.Y.

1983), indicate that Miller Drilling is not doing business in New York. It is undisputed that Miller Drilling is not a resident of New York or doing business here in its own name. Moreover, Miller Drilling's limited contacts with New York are totally unrelated to plaintiffs' cause of action.

Plaintiffs, however, allege that Miller Drilling does business in New York through seven New York-based oil and gas limited partnerships. Pennessee Oil & Gas Ltd. ("Pennessee"), is the general partner of a partnership which does business in New York. The Pennessee partnership uses Pawnee Development Company ("Pawnee") to drill and operate its wells. (Affidavit of James A. Moss, Ex. A, at 49 ("Moss Aff.")). Deloit Miller owns all the stock of Miller Drilling and 50% of the stock of Pawnee. (Affidavit of Deloit Miller ¶ 12 ("Miller Aff."); Miller Reply Aff. ¶ 7). Much of the work done by Pawnee for Pennessee is subcontracted to Miller Drilling. (Moss Aff., Ex. A, at 52).

Miller Drilling also serves as the driller and operator, either directly or through Pawnee, for six oil and gas partnerships for which Republic Energy, Inc. is the general partner ("Republic partnerships"). Each of these partnerships are headquartered in New York, have bank accounts and conduct other business in New York. (Deposition of Ira Kent, President of Republic Energy, Inc. at 36–37, 40–41, 43–44, 49–51, 55–56, 59–60 ("Kent Dep.")). Miller Drilling has obtained at least 1.4 million dollars in revenue between 1980 and 1984 through the Pennessee and Republic partnerships. (Moss Aff. ¶¶ 17–18, Ex. M). These New York-based partnerships have solicited these funds from investors in and out of New York. (Kent Dep. at 68–69).

---

**2.** A recent Second Circuit case has suggested that the so-called "solicitation-plus" rule embodied in § 301 should not be applied inflexibly. The court said:

> It is often loosely said, as though it were a rule enunciated in the text of the statute, that under the New York state law jurisdiction over a foreign corporation may not be founded on mere solicitation of business within New York. We do not agree that in New

York by statute or decision the rule is as inflexible as that statement indicates. In the days of the giants of the law the approach was surely not so absolute.

*Katz Communications, Inc. v. Evening News Association,* 705 F.2d 20, 23 (2d Cir.1983). *But see Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 763 (2d Cir.1983) (sustaining solicitation-plus test).

In addition, Deloit Miller, and other employees of Miller Drilling, have made a few visits to New York and been in telephone contact with the New York partnerships. (Deposition of Norman Nick, President of Pennessee, at 8–10, 12–16; Kent Dep. at 112–20, 26), and other New York associates (Miller Dep. at 40–41, 85–88, Deposition of David Wright, Miller Drilling's Chief Financial Officer, at 19–26, 30–34, 37–38, 48–50).

Miller Drilling contends that it has not been involved with the management or direction of these partnerships. It has simply acted as the driller/operator of gas wells financed by the partnerships. These wells are located outside New York, principally in Tennessee. (Miller defendants' reply brief at 5).

■ The fact that Miller Drilling has not itself solicited investors for its Tennessee drilling operations is not dispositive. Where a nonresident corporation, through its agents, does business in New York, those acts may be attributable to the non-domiciliary for jurisdictional purposes. *Pneuma-Flo Systems, Inc. v. Universal Machinery*, 454 F.Supp. 858, 862 (S.D.N.Y. 1978); *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 281 N.Y.S.2d 41, 45, 227 N.E.2d 851, 855 (1967). Although the term "agent," as used in the jurisdictional sense, is broader than the meaning given in the normal "principal-agent" context, *Merkel Associates, Inc. v. Bellofram Corp.*, 437 F.Supp. 612, 617 n. 2 (S.D.N.Y. 1977), plaintiff still must show that: (1) the nonresident requested the agent's performance, (2) the agent's instate activity benefited the nonresident, *Eliah v. Ucatan Corp.*, 433 F.Supp. 309, 313 (W.D.N.Y.1977), and (3) the nonresident exercised some control over the agent, *Louis Marx & Co. v. Fuji Seiko Co.*, 453 F.Supp. 385, 390 (S.D.N.Y. 1978) (Weinfeld, J.).

The Court can infer that Miller Drilling requested, or at least consented to, the solicitation of investors by the New York-based limited partnerships. Moreover, there is little doubt that Miller Drilling benefited from the activities of the New York-based partnerships. The Court is not convinced, however, that Miller Drilling exercised sufficient control over these partnerships. *See Delagi v. Volkswagenwerk*, 29 N.Y.2d 426, 328 N.Y.S.2d 653, 657, 278 N.E.2d 895, 899 (1972).

■ Neither Miller Drilling nor Pawnee is the general partner in any of the New York operations. These operations do not exist exclusively, or even primarily, to raise funds for projects involving Miller Drilling. In fact, the Pennessee connection has not even been sufficiently established. It is Pawnee, not Miller Drilling, that does work for the Pennessee partnership. Pawnee is owned, in part, by Deloit Miller, not by Miller Drilling. The fact that two companies share a common co-owner and do work together does not automatically allow the Court to attribute their acts to one another. *See Delagi*, 328 N.Y.S.2d at 657, 278 N.E.2d at 899.

Even taking all plaintiffs' assertions of interrelatedness of Miller Drilling and the New York partnerships as true, Miller Drilling receives only between 3.0 and 6.6 percent of its revenues from New York sources (Moss Aff. ¶ 18, Miller Aff. ¶ 15). We doubt that this percentage of revenues, together with the few visits to New York by Miller Drilling's officers, constitutes the measure of permanence and continuity necessary to assert jurisdiction over Miller Drilling under § 301. *Cf. Liquid Carriers Corp. v. American Marine Corp.*, 375 F.2d 951, 953 (2d Cir.1967) (occasional New York visits to solicit business and negotiate contract not doing business); *Stark Carpet Corp. v. M-Geough Robinson, Inc.*, 481 F.Supp. 499, 505 (S.D.N.Y.1980) (4 visits to and 2% of revenues from New York not doing business).

■ Plaintiffs have the burden of proving that this Court has jurisdiction over Miller Drilling. *Beacon Enterprises*, 715 F.2d at 762. Plaintiffs have failed to meet this burden with regard to Miller Drilling's responsibility for the acts of the New York-based limited partnerships. Even if plaintiffs had shown that Miller Drilling was responsible for the acts of the partner-

ships, plaintiffs would still have failed to demonstrate the requisite continuity and permanence of Miller Drilling's business contacts with New York to allow the assertion of jurisdiction under § 301. To subject Miller Drilling to § 301 jurisdiction in this case would be tantamount to finding that any nonresident that does even an insubstantial amount of business with a New York entity is subject to jurisdiction in New York even if the claim did not arise out of the nonresident's New York contacts. Such a finding, we think, would be unauthorized by § 301 and run afoul of the due process clause. We decline to so hold.

■ Plaintiffs have also failed to establish the existence of jurisdiction over Deloit Miller, who is being sued individually. In *Laufer*, the Court of Appeals ruled:

> Although a corporation can act only through an employee or agent, the employee or agent being a live rather than a fictional being can act on behalf of himself or his employer or principal. He does not subject himself, individually, to the CPLR 301 jurisdiction of our courts, however, unless he is doing business in our State individually.

449 N.Y.S.2d at 460, 434 N.E.2d at 696. Plaintiffs have failed to even allege, nor is there any evidence, that Deloit Miller conducted business in New York for himself, as distinct from Miller Drilling. In addition, Miller has sworn that his limited New York activities were performed on behalf of Miller Drilling. (Miller Reply Aff. ¶ 3). Thus, there is no jurisdiction over Deloit Miller individually.

For the reasons stated above, the Miller defendants motion to dismiss the claims against them for lack of personal jurisdiction is granted.

The Miller defendants motion for costs is denied.

### 3. *Venue*

Defendant Goodwin, on behalf of himself, Lewis and Commerce, moves to dismiss the claims against them for improper venue. Title 28 U.S.C. § 1391(b) provides that this action, which claims violations of federal securities law and state law, "may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law." The critical language of this section is "except as otherwise provided by law." *See Securities and Exchange Commission v. Briggs*, 234 F.Supp. 618, 623 (N.D.Ohio 1964) (even when only one claim of a multi-claim complaint alleges a securities violation, general venue provisions of § 1391 do not apply). Section 27 of the Securities Exchange Act of 1934 ("Act"), 15 U.S.C. § 78aa (1982), provides venue for claims brought under the Act in the district in which "any act or transaction constituting the violation occurred."

■ The act or transaction committed within the district need not constitute the core of the violation, *Leema Enterprises, Inc. v. Willi*, 575 F.Supp. 1533, 1537 (S.D. N.Y.1983), but should be an important step in the fraudulent scheme, *International Controls Corp. v. Vesco*, 490 F.2d 1334, 1337 (2d Cir.), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974), or at least more than an "immaterial part of the alleged violations." *S–G Securities, Inc. v. Fuqua Investment Co.*, 466 F.Supp. 1114, 1121 (D.Mass.1979) (quoting *Sohns v. Dahl*, 392 F.Supp. 1208, 1215 (W.D.Va. 1975)). The Second Circuit has stated that "any use of instrumentalities of the mails or other interstate facilities made within the forum district constituting an important step in ... [the] consummation [of the fraudulent scheme] is sufficient" for venue in the Southern District of New York. *Mariash v. Morrill*, 496 F.2d 1138, 1144–45 (2d Cir.1974); *International Controls*, 490 F.2d at 1347 (quoting *Hooper v. Mountain States Securities Corp.*, 282 F.2d 195, 204–05 (5th Cir.1960), *cert. denied*, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961)); *see, e.g., International Controls*, 490 F.2d at 1347 (defendant's transfer agent merely mailed dividends from New York City and venue was proper); *S–G Securities*, 466 F.Supp. at 1121 (press releases sent into district sufficient); *Stern v. Gobeloff*, 332 F.Supp. 909, 911 (D.Md.1971) (telephoning

into district sufficient); *Zorn v. Anderson,* 263 F.Supp. 745, 748 (S.D.N.Y.1966) (mailing material into district sufficient).

 In the instant case, venue is surely proper under the broad venue provisions of the securities laws. Lewis came to New York and met with Como in this district, at which time he allegedly made misrepresentations of material fact. (Amended Complaint ¶¶ 21–24). In addition, Lewis also sent numerous letters and made several telephone calls to New York that contained misrepresentations or omissions of material fact. (Amended Complaint ¶¶ 26–31). When two individuals cooperate in an alleged securities swindle, and one of them commits a material transgression of the Act in a particular district, venue exists for all coconspirators in that district: *Hill v. Turner,* 492 F.Supp. 61, 63–64 (M.D.Pa. 1980); *Keene Corp. v. Weber,* 394 F.Supp. 787, 790 (S.D.N.Y.1975). Thus, venue as to Commerce, Lewis and Goodwin is proper in this district.[3]

Accordingly, defendants' motion to dismiss for improper venue is denied.

### 4. *Disqualification of Counsel*

Defendant Goodwin, on behalf of himself, Lewis and Commerce, moves this Court for an order disqualifying plaintiffs' counsel, James A. Moss. Goodwin's motion is grounded on the assertion that the interests of Como are adverse to those of all the other plaintiffs. Goodwin contends that Como made misrepresentations and omissions of material fact to the other plaintiffs and thus is liable to them under federal securities laws. (Goodwin Aff. ¶¶ 10–15).

The Code of Professional Responsibility ("Code") discourages, and in some cases bars, attorneys from representing multiple parties when the interests of those parties could prove to be adverse. (Ethical Considerations 5–14, 15, 16 and 19, Canons 5 and 9, Disciplinary Rule 5–105). There are, however, many situations where represen-

tation of multiple clients is completely proper. (Disciplinary Rule 5–105(C)).

The granting of a motion to disqualify counsel for alleged violations of the Code is generally disfavored. Such a motion is often interposed for tactical reasons and has the immediate deleterious effect of separating the client from his chosen counsel. *Board of Education of the City of New York v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979). In addition, such motions inevitably cause delay. *Id.* Cognizant of these problems, the Second Circuit has set forth the following test:

> Weighing the needs of efficient judicial administration against the potential advantage of immediate preventive measures, we believe that unless an attorney's conduct tends to "taint the underlying trial" ... by disturbing the balance of the presentations in [undermining the court's confidence in the vigor of the attorney's representation of his client or where the attorney is at least in a position to use privileged information concerning the other side obtained through prior representation] ... courts should be quite hesitant to disqualify an attorney.

*Id.* (citations omitted).

 Defendant Goodwin argues that Mr. Moss' vigorous representation of Como will be detrimental to the interests of the other plaintiffs. These plaintiffs, however, have been apprised of this potential conflict of interest and have chosen to continue to have Mr. Moss as the joint representative of themselves and Como. (*See* Affidavits of Bieler, Forrester, Friedland, Robert and Dorothy Friedlander, Maita, Margolies, Zerner, and Peck). When clients, with knowledge of a possible conflict of interest, reaffirm their desire for joint representation, the Court should be reluctant to disqualify their chosen counsel. *See Tadier v. American Photocopy Equipment Co.,* 531 F.Supp. 35, 37 (S.D.N.Y.1981); *Altschul v.*

---

**3.** The Miller defendants have been dismissed for lack of personal jurisdiction and Clary Drilling has not objected to venue. Under Rule 12(h) of the FRCP, if a party fails to raise a venue objection promptly, he waives it. *See* 15 Wright, Miller & Cooper, Federal Prac. & Proc.: Civil §§ 3826, 3829 (1976).

*Paine Webber, Inc.,* 488 F.Supp. 858, 861 (S.D.N.Y.1980).

 The basis of this disqualification motion is, in fact, simply an argument that Como, rather than the defendants, are responsible for injuries to the investor group of plaintiffs. Defendants' argument is a defense, not a viable ground for disqualification of counsel. The cases cited in support of the motion are inapposite. They relate to possible conflict of interest in multiple representation of criminal defendants, *People v. Lloyd,* 51 N.Y.2d 107, 432 N.Y.S.2d 685, 412 N.E.2d 371 (1980); *People v. DeSuze,* 77 A.D.2d 571, 429 N.Y.S.2d 464 (2d Dep't 1980); *People v. Doe,* 98 Misc.2d 805, 414 N.Y.S.2d 617 (Cty.Ct. Nassau Cty.1979), and conflict of interest in civil cases where plaintiff's counsel had previously represented the defendant or its agent, *Sapienza v. New York News, Inc.,* 481 F.Supp. 676 (S.D.N.Y.1979); *Narel Apparel Ltd. .v. American Utex Int'l,* 92 A.D.2d 913, 460 N.Y.S.2d 125 (2d Dep't 1983). In the criminal cases, the motions to disqualify were all denied either because no real conflict existed or, as in this case, the clients reaffirmed their desire for joint representation despite a possible conflict. In addition, the dangers associated with a conflict of interest are more acute in criminal cases than civil cases. Regarding the civil cases, defendant has failed to even allege that Mr. Moss has privileged information about the defendants based on his prior representation of them.

Accordingly, defendants' motion for disqualification of Mr. Moss, as plaintiffs' joint counsel, is denied.

## CONCLUSION

Plaintiffs' RICO claim is dismissed. The motion of defendants Miller Drilling and Deloit Miller to dismiss for lack of personal jurisdiction is granted. The Miller defendants' motion for costs is denied.

The motions of defendants Goodwin, Lewis and Commerce to dismiss for im-proper venue and to disqualify plaintiffs' counsel is denied.

SO ORDERED.